PROSKUAER ROSE LLP
11 Times Square
New York, New York 10036
Telephone: (212) 969-3165
Facsimile: (212) 969-2900
Robert J. Cleary
Sarah S. Gold
Geoffrey T. Raicht

*Attorneys for Tri-State Employment Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TS EMPLOYMENT, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10243 (MG) |

**OBJECTION TO *EX PARTE* APPLICATION OF CHAPTER 11 TRUSTEE FOR AN ORDER TO ENSURE PRESERVATION OF DOCUMENTS AND TO ALLOW THE TRUSTEE IMMEDIATE ACCESS TO COMPUTERS AND SERVERS**

Tri-State Employment Services, Inc. ("Tri-State") hereby files this objection (the "Objection") and the accompanying declaration of Irwin Kossoff (the "Kossoff Declaration") in opposition to the *Ex Parte* Application of Chapter 11 Trustee For an Order to Ensure Preservation of Documents and to Allow the Trustee Immediate Access to Computers and Servers [Docket No. 60] (the "Application"). Proskauer Rose LLP ("Proskauer" or the "Firm"), counsel to Tri-State, also files this Objection on its own behalf and in further support of the letter of Sarah S. Gold, Esq. filed with this Court on March 30, 2015 [Docket No. 69] (the "Gold Letter").[1]

---

[1] The further facts and circumstances responding to the Trustee's allegations with respect to Proskauer's representation of the Debtor up to the time of the March 30, 2015 hearing on the Application are set forth in the Gold Letter incorporated herewith and attached to this objection as Exhibit 1 for the Court's convenience.

1

# PRELIMINARY STATEMENT[2]

Tri-State

Objections to the relief sought by the Trustee relating to Tri-State are mostly moot because the Trustee had completed imaging of all the electronic records of Tri-State prior even to its first appearance on the Application on March 30. While Tri-State does not object to a requirement to preserve records, counsel for Tri-State and for the Trustee have discussed agreeing upon language to insure Tri-State is not prohibited from making changes to its books and records in the ordinary course of its active daily business. The Trustee is fully protected by having imaged all the electronic records of Tri-State, and we believe the issue can be resolved between the parties. If it is not, we will further address the matter with the Court.

Proskauer

In addition to seeking relief from Proskauer's client, Tri-State, the Trustee filed the Application and declaration on an *ex parte* basis seeking a TRO to enjoin and restrain <u>the legal professionals</u>, Proskauer and Carter Ledyard & Milburn, LLP ("Carter"), counsel to Corporate Resource Services Inc. ("CRS"), from destroying documents of Tri-State, the Debtor, and CRS. The absurdity of the request is made manifest by a review of the Trustee's declaration which not only contains absolutely zero facts (because none exist) that the documents at issue were ever in danger of being destroyed by the legal professionals, <u>but actually affirmatively states that the legal professionals do not pose a risk of document destruction</u>. Nonetheless, in a gratuitous and unprofessional attempt to smear the Firm, the Trustee, in the Application and the Feltman Declaration, provides false and misleading statements regarding Proskauer's limited representation of the Debtor and its non-debtor affiliate in connection with a "hold notice" received by those entities from the Securities and Exchange Commission ("SEC") and does not

---

[2] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to it below.

provide a single fact to support the absurd notion that Proskauer was about to destroy any documents. Indeed, to suggest that Proskauer professionals would even entertain the idea of destroying documents pertinent to potential litigation and subject to SEC litigation hold notices and subpoenas is offensive.[3]

Accordingly, any injunctive relief should expressly exclude Proskauer since there is no factual basis to support the legal showing necessary to obtain injunctive relief.

## BACKGROUND

1. On February 2, 2015 (the "Petition Date"), TS Employment Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

2. On February 9, 2015 and again on February 13, 2015, the Debtor and non-debtor Tri-State received notices from the SEC requiring that certain records of these two entities be preserved as potential evidence in connection with the SEC's investigation captioned "*In the Matter of Corporate Resource Services Inc.*" (the "SEC Matter").

3. On February 23, 2015, the Debtor and Tri-State engaged Proskauer to represent them solely in connection with the SEC Matter.

4. Subsequent to Proskauer's engagement, on February 27, 2015, the Office of the United States Trustee appointed, and this Court approved, James S. Feltman to serve as the Chapter 11 trustee (the "Trustee") of the Debtor's estate. [Docket Nos. 33 & 34].

---

[3] Subsequent to the March 30, 2015 hearing, counsel to the Trustee agreed to correct the record with respect to the false allegations against Proskauer, but has yet to do so. When counsel for the Trustee was advised that Proskauer intended to file an objection, we received an email at 6 p.m. on April 21, in which he stated "it has been our position since 3/30 that Proskauer was to be released from the injunction on its representation, that you agreed to put on the record, that it will preserve documents pending further order from the Court." Since no such relief has ever been sought from the Court by the Trustee, we have no choice but to file this objection in a timely manner.

5. One month later, on March 26, 2015, the Trustee filed the Application on an *ex parte* basis which sought, among other things:

- A temporary restraining order ("TRO") prohibiting the destruction or alteration of any computers and laptops, servers or other electronic devices, used by the Debtor, non-debtor CRS or Tri-State (pending further order of the Court), including all books and records of those entities; and

- Granting the Trustee immediate unfettered access to all books, records and computer servers, including computers and laptops and other electronic devices, used by the Debtor, CRS or Tri-State (and back up tapes, if any) so that the Trustee can copy and secure that information (to be viewed *only* after further Order from this Court following Rule 2004 Applications from the Trustee)

6. As the premise of his Application, the Trustee alleged "there appears to have been a massive fraud involving the Debtor." Application at p. 3. This is an allegation that the Trustee has repeated as recently as April 15, 2015. *See* Declaration of James S. Feltman, Chapter 11 Trustee, in Support of Ex Parte Application [Docket No. 60-2] (the "Feltman Declaration") at ¶ 10; *see also* Chapter 11 Trustee's Ex Parte Application for an Order Authorizing the Issuance of Subpoenas for the Production of Documents and Deposition Testimony Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure [Docket No. 93] at ¶ 16. To date, the Court has heard only the Trustee's allegations, but as set forth in the Kossoff Declaration, the facts do not support the Trustee's allegations and there has been no fraud, there is no missing or diverted $100 million, and every dollar can be accounted for, as all transactions of the Debtor are reflected on the books and records of the Debtor.

7. On an *ex parte* basis, the Trustee made his allegations, now disputed in the Kossoff Declaration, and obtained a TRO enjoining Tri-State from destroying documents of the Debtor, Tri-State and CRS. However, the Trustee went too far when he included the legal professionals within the scope of the injunctive relief of the TRO. Specifically, the injunctive

4

relief as to Proskauer was entirely without any factual basis, let alone the required legal showing to obtain such relief. In purported support of the injunctive relief against Proskauer, the Trustee filed the Feltman Declaration which made inaccurate statements, none of which, even if true, suggest that there was any risk (let alone any imminent one) that the Debtor's documents in Proskauer's possession were about to be destroyed.[4]

## OBJECTION

*A. Tri-State Cannot Allow the Trustee's Uncontested Statements Alleging a "Massive Fraud" Involving Tri-State to Prejudice the Views of this Court.*

8. The Trustee alleges in the Application that a "massive fraud" has taken place involving the Debtor and that "suspicious and lopsided business transactions" have occurred between the Debtor and Tri-State and related entities. In support of these unfounded statements, the Trustee cites to various transfers out of the Debtor, suggesting that large sums of money have been improperly diverted from the Debtor. As set forth in the Kossoff Declaration, there has been no "massive fraud" involving the Debtor, nor are there any missing funds, and all transactions of the Debtor are recorded on its books and records. As Mr. Kossoff explains, the Trustee picked out from the general ledger only sums **flowing out of** the Debtor when he had available on the same general ledger sums **flowing into** the Debtor. The Trustee also had journal entries which reflected the quarterly and annual consolidated balances which demonstrate that, contrary to his assertion that monies were improperly diverted from the Debtor, the net of all transactions between the Debtor and Tri-State and related entities as of January 31, 2015, is a $32 million debt <u>owed to Tri-State by the Debtor</u>. And, Mr. Kossoff notes that prior to filing his

---

[4] Proskauer, founded in 1875, is a leading global law firm whose professionals regularly receive the highest recognitions for their legal excellence. Proskauer is a regular fixture in the American Lawyer 100 and ranked 36th on that list in 2014. Proskauer's clients include many of the world's top companies, financial institutions, investment funds, not-for-profit institutions, governmental entities and other organizations across industries and borders.

Application, the Trustee had been given, at his request, the Debtor's January 31, 2015 balance sheet reflecting that net outstanding debt due from the Debtor to Tri-State of $32 million.

9. Mr. Kossoff further explains that business stresses, not fraud, caused the Debtor to fall behind in making some payroll tax payments in 2013 and 2014, despite having paid $391 million in federal payroll taxes during its short operating history, including approximately $133 million in federal payroll tax payments in 2014 alone. First, there was a large shortfall in payment of invoices received from the Debtor's client, CRS. Second, the Debtor underestimated what turned out to be the outsized costs of worker's compensation, on the basis of which estimates CRS was charged. This under-estimation of worker's compensation expenses, as well as required collateral payments created a shortfall between what CRS was charged for worker's compensation and what the Debtor was obligated to pay. These shortfalls between payments received from CRS and the obligations of the Debtor created the Debtor's difficulty in making some of the payroll tax payments in a timely fashion. In sum, Mr. Kossoff explains that falling behind in payroll tax payments did not involve fraud and the Debtor did make most of the payroll tax payments. For example, in 2014, the Debtor made total federal payroll tax payments of approximately $133 million, but still owed approximately $26 million at year end.

10. Finally, Mr. Kossoff explains that the Debtor was addressing the shortfall with the IRS in early 2015 to formulate a payment plan and he believes that business changes underway would have enabled the debtor to catch up on the late payments.

B. *The Injunctive Relief Against Proskauer was Without Legal or Factual Basis and Should Be Stricken From the TRO.*

11. The Trustee filed the Feltman Declaration with this Court, under the penalty of perjury, which stated that Proskauer: (a) was retained by the Debtor without his "knowledge or consent"; (b) was "not acting at the direction of the Trustee;" and (c) had not honored his request

to see what Debtor's material has been copied. *See* Feltman Declaration at ¶¶ 17-19. As described in the Gold Letter, these statements are inaccurate.[5] More importantly, they do not provide any evidence that Proskauer, as counsel to Tri-State and the Debtor, was about to, or in the process of, destroying the Debtor's documents in its possession. As such, the Trustee was not and is not entitled to injunctive relief against Proskauer.

12. In the Second Circuit, in order to obtain injunctive relief, the movant must make a showing of (i) irreparable harm absent relief and (ii) either (a) probability of success on the merits or (b) if there is doubt as to the merits, that the balance of hardships weighs in favor of the party seeking injunctive relief. *See, e.g., Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014); *Tinnerello & Sons, Inc.*, 141 F.3d 46, 51-52 (2d Cir. 1998), *cert. denied* 525 U.S. 923 (1998).[6] "Injunctive relief is a drastic remedy which should not be routinely granted." *Medical Society v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977). The moving party must present evidence demonstrating sufficient certainty of imminent irreparable harm in order to establish the need for injunctive relief and speculation or industry experience is insufficient to meet that test. *See XTRA Lease LLC v. Universal Custom Millwork, Inc.*, 2011 U.S. Dist. LEXIS 11610, at *6 (N.D.N.Y. Feb. 7, 2011) ("Plaintiffs concern is based upon its 'experience that lessees having financial difficulties may attempt to conceal Trailers.' This allegation is insufficient to warrant injunctive relief.") (a courtesy copy is attached as Exhibit 2); *In re American Preferred Prescription, Inc.*, 186 B.R. 350, 355 (Bankr. E.D.N.Y.

---

[5] Since March 30, 2015, Proskauer has had several conversations with the Trustee's counsel to determine if the Trustee, with this Court's approval, wanted Proskauer to represent the Debtor in the SEC matter. Since no decision in that regard was ever conveyed, Proskauer advised the SEC that Proskauer does not represent the Debtor and is not authorized to respond to the SEC subpoena issued to the Debtor. Accordingly, Proskauer is only representing Tri-State (and not the Debtor) in the SEC Matter.

[6] Rule 7065 of the Federal Rules of Bankruptcy Procedure requires that injunctive relief be brought by adversary proceeding. Because the Trustee has not filed an adversary proceeding, the important procedural requirements that entitle parties against whom injunctive relief is being sought with due process have not been followed and, therefore, the Application should be denied in any event.

1995) ("The Second Circuit has held that an applicant seeking a preliminary injunction must demonstrate that the injury is actual and imminent, and that mere possibility of harm is insufficient to justify such a drastic remedy.") (*citing Borey v. National Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)). No such evidence was submitted by the Trustee to permit injunctive relief against Proskauer. In fact, through his statements in the Application and those conveyed directly to Proskauer, the Trustee concedes that injunctive relief against the Firm was not appropriate or warranted.

13. First, in footnote 4 of the Application, where the Trustee attempts to justify the need for moving for a TRO on an *ex parte* basis, the Trustee states: "While ***we do not believe that Proskauer or Carter [Ledyard] would engage in improper activities***, if they were given notice, they would likely have a duty to report this Application to their clients." Application at n.4 (emphasis added).

14. Second, where the Trustee cites the legal standard that needs to be met in order for entry of a document preservation order, he affirmative states that he has no concern that Proskauer would destroy documents. The Trustee recited the standard for a document protection order as follows: "(i) the level of concern for the continuing existence of documents absent a court order; (ii) the risk of irreparable harm to the movant absent such an order; and, (iii) the ability of the party (or parties) in possession of the evidence to preserve it." Application at ¶ 35 (*citing Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004)). The Trustee then explicitly conceded that Proskauer was not a focus of his concern when he stated the following: "In light of the investigation of potential fraud, it requires no stretch of the imagination to anticipate that employees of Tri-State or CRS (***not Proskauer*** or

8

Carter) may take steps to destroy documents that the Trustee needs to properly administer this estate." *Id.* at ¶ 37 (emphasis added).

15. Third, in the Application, the Trustee alleges without any factual support, that spoliation "is a real and immediate danger," Application at ¶ 42, without the relief sought and that "the key records, mostly electronic records, [ ] may be lost forever." Application at p.3. At the same time, the Trustee acknowledged that he is aware that Proskauer had undertaken to image all the electronic records of the Debtor and Tri-State to meet the obligations of the SEC hold notices and had spent weeks at the task. *See* Feltman Declaration at ¶ 18. Nonetheless, he asserted that "[a]t least some or all of [the Tri-State records 'comingled on the servers located in New York'] are at risk of destruction." Application at ¶ 31. And, he asserts that the TRO is necessary to "protect against spoliation." Feltman Declaration at ¶ 25.

16. To the extent these statements are made to support an injunction issued against Proskauer (which they do not), the Trustee was aware that the information on the servers of the Debtor and Tri-State were never at risk of destruction and he knew that Proskauer had spent weeks having all the servers imaged by an outside vendor, The Oliver Group, acknowledged by the Trustee's counsel to be "the best in the business." Furthermore, not only did the Trustee not inform Proskauer that he could not trust Proskauer with records of the Debtor and Tri-State, the contrary was true. The Trustee actually **requested that Proskauer take possession** of boxes of server backup tapes which were stored at the Debtor's premises and secure them at Proskauer's offices – which was done at his request. To then turn around and file an *ex parte* Application to enjoin Proskauer from destroying documents is paradoxical.

17. The Trustee also contends that he had an "independent duty to act" and that he "cannot rely on attorneys who are being paid by potential targets to discharge those duties for

9

him." Application at ¶ 28. When the Trustee took this same position in Court on March 30, 2015, with respect to CRS whose counsel, Carter Ledyard, was having documents imaged through its outside vendor, the Court directed that only one vendor be agreed upon and used. Proskauer did not seek similar relief for Tri-State because, by that point, the Trustee had already retained another expert and duplicated, at cost to the Debtor, the imaging of all the same records which the Oliver Group had already imaged at Proskauer's request. Therefore, insofar as the TRO was addressed to imaging electronic documents of the Debtor and Tri-State, objections were rendered moot before the March 30, 2015 hearing because, as the Trustee represented to Proskauer at that time, imaging of the Debtor and Tri-State electronic documents by the Trustee's experts had already been completed.

## **CONCLUSION**

18. As set forth above, the Trustee has not produced a single fact which would support an injunction issued against Proskauer to prevent spoliation of documents or injunctive relief. In fact, the opposite is true. The Trustee affirmatively stated that Proskauer does not pose any risk of destroying documents. Consequently, we respectfully request that the TRO be amended to remove such relief against Proskauer and that no further such relief be granted. The Trustee's counsel last night indicated that he is prepared to withdraw the requested relief, although he has not yet done so. (*See* n.3 *supra*). With respect to Tri-State, as set forth above, Tri-State has no objection to a document preservation requirement but does need to be able to make changes to its books and records in the ordinary course of business. Again, the Trustee's counsel has indicated that this issue can be resolved, although that has not yet occurred.

Dated: New York, New York
April 22, 2015

                                        PROSKAUER ROSE LLP

By:   /s/ Geoffrey T. Raicht
       Robert J. Cleary
       Sarah S. Gold
       Geoffrey T. Raicht

       11 Times Square
       New York, New York 10036
       Telephone: (212) 969-3165
       Facsimile: (212) 969-2900

       *Attorneys for Tri-State Employment Services, Inc.*