| | |
|---|---|
| TOGUT, SEGAL & SEGAL LLP<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000<br>Albert Togut<br>Jeffrey R. Gleit<br>Lauren L. Peacock | Hearing Date and Time:  8/18/2015 at 2:00 p.m. (EST) |

*Counsel for James S. Feltman,*
 *Not Individually But Solely in His Capacity*
 *as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
:
In re:                                              :         Chapter 11
:
:         Case No. 15-10243 (MG)
TS EMPLOYMENT, INC.,                 :
:
           Debtor.                              :
:
---------------------------------------------------------------X

**CHAPTER 11 TRUSTEE'S REPLY IN SUPPORT OF HIS APPLICATION TO
TRANSFER VENUE OF THE CHAPTER 11 CASES OF CORPORATE RESOURCE
SERVICES, INC. AND ITS AFFILIATED ENTITIES FROM THE UNITED STATES
BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE TO THIS DISTRICT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.      THIS COURT IS THE PROPER AUTHORITY
           TO DETERMINE VENUE OF THE CRS CASES
           BECAUSE CRS AND TSE ARE AFFLIATES ..................................................... 3

    II.     CRS HAS NOT OVERCOME THE TRUSTEE'S
           STRONG SHOWING  THAT VENUE SHOULD
           BE TRANSFERRED UNDER 28 U.S.C. § 1412 ................................................ 3

           A.     CRS Fails to Counter the Trustee's Strong
                   Showing that the Interests of Justice Are
                   Served by a Transfer to New York ......................................................... 4

                  i.       CRS Ignores the Efficiencies and Judicial
                         Economy That Will Result From a
                         New York Transfer ........................................................ 4

                  ii.      CRS Concedes that New York Has
                         an Interest in These Cases Because
                         Its Offices Are Here ...................................................... 6

                  iii.     There is No Valid Connection to
                         Delaware Beyond the Incorporation
                         of Seven of its Eight Affiliates .................................................... 6

           B.     CRS Cannot Seriously Dispute that Transfer
                   of Venue of the CRS Chapter 11 Cases to
                   New York Strongly Favors the Convenience of the Parties ............... 7

NOTICE ........................................................................................................... 10

CONCLUSION ............................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Andover Data Servs., Inc.*, 35 B.R. 297 (Bankr. S.D.N.Y. 1983) ......................................... 5

*In re EB Capital Mgmt. LLC*, 2011 WL 2838115 (Bankr. S.D.N.Y. July 14, 2011) ................... 7

*In re Enron Corp.*, 284 B.R. 376 (Bankr. S.D.N.Y. 2002) ............................................................ 5

*In re Prof'l Sec. Servs., Inc.*, 162 B.R. 901 (Bankr. M.D. Fla. 1993) ........................................... 5

*In re RadioShack,* Case No. 15-10197 (BLS) (Mar. 20, 2015) ..................................................... 7

*United States v. Huff*, No. 12 CR 750 NRB, 2014 WL 7192410 (S.D.N.Y. Dec. 17, 2014) ...... 5

**Statutes**

11 U.S.C. § 101(2)(B) ..................................................................................................................... 3

11 U.S.C. § 1408 ............................................................................................................................. 3

11 U.S.C. § 1412 ............................................................................................................................. 3

**Rules**

Fed. R. Bankr. P. 1014(b) ............................................................................................................... 3

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

James S. Feltman, not individually but solely in his capacity as chapter 11 trustee (the "Trustee") for the above-captioned debtor ("TSE"), by his attorneys, Togut, Segal & Segal LLP, hereby submits this reply (the "Reply") to the opposition filed by CRS[1] on August 11, 2015 [Dkt. No. 135] (the "Opposition") to the Trustee's Application. In support of this Reply, the Trustee respectfully represents:

**PRELIMINARY STATEMENT**

At base, CRS' Opposition is not about venue. CRS' real concern is that the CRS cases will be jointly administered with TSE and that a thorough investigation of the complex fraud that occurred at both companies will occur. CRS clouds its true intent by arguing that transferring their cases here "will unnecessarily entangle the [CRS] cases and that of TSE." *See* Opp'n at 20. This argument is baseless and contrary to the facts. The reality is that these debtor affiliates are connected and need to be treated as such.

Nothing in the Opposition overcomes the Trustee's Herculean showing that the interests of justice and the convenience of the parties compel the transfer of the CRS cases. Or that CRS and TSE are joined at the hip. Metaphor aside, CRS and TSE were irrevocably intertwined. As CRS has conceded:

- TSE did not have its own employees and CRS management directed TSE;
- TSE "could not exist but for [CRS]," and the funds from CRS' New York-based secured lender, Wells Fargo, Opp'n at 3, 7, 10;
- CRS has provided debtor-in-possession financing to TSE in its chapter 11 case, "funding the TSE Trustee's investigation to the extent of $1 million," *id.* at 1;
- CRS relied upon TSE so much prior to filing that it "could not continue wind-down operations . . . without the continued involvement of TSE," *id.* at 10;
- TSE's records, for the same customers, were intermingled on the same servers, at the same New York location; and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Application.

1

- CRS caused TSE to file for bankruptcy here to placate its lender. *See id.* at 10.

Facts and issues that are relevant to or concern the CRS' chapter 11 cases will thus be relevant to and concern the TSE chapter 11 case (and vice versa).

This alone is sufficient to justify transfer of the CRS cases to this District. But that is not all. As CRS explained in its *own* first day declaration, the *same* missing $100 million caused CRS to file for bankruptcy. While CRS calls the Trustee's investigation "mere speculation," CRS cannot dispute that the IRS intends to pursue large claims against *both* estates for the same missing funds and that those claims will involve the same general nexus of facts.

The Trustee need not prove a fraud occurred to show that justice will be served if the CRS cases are transferred here. Transfer to New York will also be convenient. Working from CRS' concessions and undisputed facts, all signs point to New York: six of CRS' top thirty creditors are here, CRS is physically located here, the witnesses are here (and nationwide, but not in Delaware), and this Court is already familiar with facts relating to CRS by virtue of its familiarity with TSE. Notably, CRS has failed to list a single connection to Delaware beyond incorporation. It is not even a close call. This is why the SEC has affirmatively joined the Application and an *ad hoc* committee of CRS' unsecured creditors do not object to transfer of venue.

Finally, CRS has grossly mischaracterized off-the-record settlement negotiations, and the Trustee's intentions in these cases. Without divulging those inadmissible discussions, the Trustee rejected CRS' various offers because they were not feasible and because he determined that they were not in the best interests of the estate.[2]

---

[2] Despite CRS' insinuation that the Trustee is motivated by an improper desire for fees, Opp'n at 5, the Trustee has acted consistent with his fiduciary duties. The Trustee's investigation has uncovered certain material inconsistencies in TSE's financial data that should match CRS' records, but do not.
*(footnote continued on the following page)*

2

# ARGUMENT

**I.    THIS COURT IS THE PROPER AUTHORITY TO DETERMINE VENUE OF THE CRS CASES BECAUSE CRS AND TSE ARE AFFLIATES**

1. CRS argues that Rule 1014 does not govern because CRS and TSE are not "in fact current affiliates." *See* Opp'n at 13. This is simply wrong.

2. As explained in the Application, TSE and CRS have a common owner, Robert Cassera, App. ¶ 26, which CRS does not dispute. Instead CRS asserts – without relying on a single case – that "[t]he status as an affiliate for purposes of Rule 1014(b) is focused on common control of multiple debtors," and "[t]he fact that [CRS] and TSE share a common indirect shareholder, when that person has had no involvement for months, no rights of control, and worthless equity, cannot compel application of Rule 1014(b)." Opp'n at 13. But these characterizations of CRS' control do not determine whether TSE is an "affiliate" under the Bankruptcy Code.

3. An "affiliate" is a "corporation 20 percent or more of whose outstanding voting securities are ***directly or indirectly owned***, controlled, ***or*** held with power to vote . . . ***by an entity that directly or indirectly owns***, controls, or holds with power to vote, 20 percent or more ***of the outstanding voting securities of the debtor***[.]" 11 U.S.C. § 101(2)(B). CRS concedes that the two companies share a "common indirect shareholder," Robert Cassera. Opp'n at 13, Victor ¶¶ 30-31. That is all that the statute requires. As TSE and CRS are affiliates, the Application belongs in this Court.

**II.    CRS HAS NOT OVERCOME THE TRUSTEE'S STRONG SHOWING THAT VENUE SHOULD BE TRANSFERRED UNDER 28 U.S.C. § 1412**

4. Despite the amount of space that CRS expends establishing that venue is proper in Delaware under § 1408 and that transfer of venue under § 1412 is

---

This will require a review of both the companies' records to untangle and reconstruct the respective financial affairs and will likely require joint administration of the estates.

discretionary and should only be supplanted on a strong showing, *see* Opp'n at 13-17, TSE does not disagree. Where CRS and TSE part ways is whether a strong showing has been met here. It has. This is not even a close call.

**A.     CRS Fails to Counter the Trustee's Strong Showing that
the Interests of Justice Are Served by a Transfer to New York**

    i.     CRS Ignores the Efficiencies and Judicial
Economy That Will Result From a New York Transfer

5.     CRS argues that cases that find a sufficiently "intertwined" relationship between affiliates to warrant transfer are distinguishable because, in those cases, "there was an already established connection above and beyond common ownership or affiliation," and all we have here is an "unproven scheme of fraud and the erroneous notion that [CRS] could not exist without TSE." *See* Opp'n at 19 (citing cases). This completely disregards the facts and misreads law.

6.     As to the facts, there are a myriad of "connections above and beyond common ownership" here. Even putting aside the Trustee's investigation for moment, TSE did not have any of its own employees and was directed in part by the management and employees of CRS, Feltman Decl. ¶ 8, the same officers and management would perform work for TSE and CRS, *id.* ¶ 10, TSE relied upon CRS for its funding, *id.* ¶ 11, TSE's and CRS' records were intermingled at the same New York location, *id.* ¶ 19,[3] and CRS has provided financing to fund the Trustee's investigation. Opp'n at 1. As CRS concedes, "TSE could not exist but for [CRS]." *Id.* at 3. Moreover, CRS' own Opposition demonstrates the blurred lines between the two companies: the same 30,000 people are referred to as "employees of TSE working for customers of [CRS]," *id.* at 8, and "employees [that] were transitioned" in CRS' wind-down. *Id.* at 10.

---

[3]     CRS does not contest these facts and therefore has admitted them.

7.     CRS and TSE are thus sufficiently "intertwined" to justify transfer. *See, e.g., In re Enron Corp.*, 284 B.R. 376, 398 (Bankr. S.D.N.Y. 2002) (finding affiliates with, among other things, post-petition financing obligation to be "intertwined" such that circumstances dictated venue transfer); *In re Andover Data Servs., Inc.*, 35 B.R. 297, 301 (Bankr. S.D.N.Y. 1983) (transferring venue to first-filed jurisdiction of affiliate where, among other things, action in the first-filed case affected the second-filed entity).

8.     And although CRS objects to the Trustee's reliance on its investigation and any so-called "unproven scheme of fraud," Opp'n at 19, CRS cannot dispute – because it has repeatedly conceded in its filings – that the same missing $100 million (or more) in withholding taxes for its employees caused both TSE and CRS to file for bankruptcy. *See* Opp'n 8-11, Victor Decl. ¶ 7. Nor can CRS contest the fact that the IRS will pursue large claims against both TSE and CRS for its respective role in the missing millions of dollars in funds (which, as CRS notes, may be substantially more). *See* Opp'n at 8.[4] In light of this, the Trustee need not prove a fraud today for it to be patently obvious to all parties-in-interest that the administration of both estates will be "greatly facilitated" if both cases are before a single court. *See Andover,* 35 B.R. at 301. Put another way, it is not "mere speculation" of fraud, but a single set of overlapping facts that involve both TSE and CRS that dictates transfer.[5]

9.     CRS also downplays the costs to the Court and the estates should the CRS chapter 11 cases stay in Delaware. Forcing CRS' (and TSE's) parties-in-interest to travel

---

[4]   On July 16, 2015, the IRS filed its proof of claim, claim number 32, against TSE in the amount of $391,007,153.46. Even if CRS believes that it did not cause that failure, the law does not allow companies to avoid their responsibility to the IRS merely by delegating their duties. *See, e.g., In re Prof'l Sec. Servs., Inc.*, 162 B.R. 901, 904 (Bankr. M.D. Fla. 1993); s*ee also United States v. Huff,* No. 12 CR 750 NRB, 2014 WL 7192410, at *3 (S.D.N.Y. Dec. 17, 2014).

[5]   CRS maintains that it did not file its cases in Delaware to thwart the Trustee's investigation. *See* Opp'n at 1. Considering the threadbare connections to Delaware, the Trustee and the SEC, who has joined in the Trustee's Application, disagree. *See* App. at 1; Dkt. No. 132, at 3.

5

and present issues that will affect both estates to two courts in two different jurisdictions is inefficient and wasteful for all involved. Additionally, CRS attempts to diminish this Court's obvious learning curve because, by its estimation, "very little activity has occurred in this Court." *See* Opp'n 20. That is wrong. Since the Petition Date, over 130 documents have been filed, over 25 orders have been entered, and CRS has appeared multiple times, including to provide debtor-in-possession financing. *See* [TSE Dkt. Nos. 59, 72, and 92].

10. CRS has therefore failed to overcome the Trustee's showing that the most important factors of efficiency and judicial economy point to New York.

    ii.    CRS Concedes that New York Has an Interest in These Cases Because Its Offices Are Here

11. CRS concedes that New York has an interest in its chapter 11 cases being decided here because CRS' "office is located in New York," Opp'n at 21, but then states that "this fact does not, and cannot alone tip the scale in favor of transfer of venue." *Id*. at 21. Of course, that is not the only fact tipping the scales here. On top of the close relationship to TSE (and CRS' many appearances in the first-filed TSE case), CRS concedes in the very same paragraph that six of its top thirty creditors are in New York and four pieces of litigation are here as well. *See id.*

12. Notably absent from the Opposition is any plausible interest in the state of Delaware in these cases beyond the incorporation of seven of the eight so-called "Delaware Debtors." Accordingly, this factor weighs in favor of transferring venue.

    iii.    There is No Valid Connection to Delaware Beyond the Incorporation of Seven of its Eight Affiliates

13. CRS argues that its choice of forum should not be disturbed because there is "direct precedent" in the Delaware Court reducing a secured lender's right to reserve

6

on account of indemnity claims, which will provide it with an advantage. Opp'n at 23. This is not a reason to keep the CRS chapter 11 cases in Delaware.

14. Seeking a more favorable ruling is not a reason to transfer venue. *See In re EB Capital Mgmt. LLC*, 2011 WL 2838115, at *4 (Bankr. S.D.N.Y. July 14, 2011) (noting that the court was convinced that "the proper forum. . . is the location of assets and creditors" and that the debtor "should not be able to 'forum shop' this case in hopes of getting a more favorable ruling").

15. And even if it were, contrary to CRS' assertion, there is no "direct precedent" in the Delaware Court on this issue. Opp'n at 23. As CRS admits elsewhere in the Opposition, there is at best a "likely favorable application of the law" reducing a secured lender's right to a reserve based on an indemnity claim, *see id*. at 22, because *In re RadioShack* did not rule on the indemnity claim reserve issue. *In re RadioShack*, Case No. 15-10197 (BLS) (Mar. 20, 2015), Hearing Transcript at 21. Nor does CRS cite to any unfavorable cases in this District. As such, CRS has not articulated any harm that would occur by transferring these cases to New York.

16. Based on the strong showing made by the Trustee and CRS' inability to articulate any connection to Delaware beyond incorporation, and because its creditors have either joined the Application or not objected to transfer, this Court should disrupt CRS' choice of forum and transfer the CRS cases to this District in the interests of justice.

**B.    CRS Cannot Seriously Dispute that Transfer of Venue of the CRS Chapter 11 Cases to New York Strongly Favors the Convenience of the Parties**

17. As to convenience, by the estimation of CRS and its creditors, its connections are to New York, and not Delaware.

18. <u>CRS concedes that a number of creditors are in New York, and its creditors have joined or do not object to transfer of venue.</u> Although CRS qualifies that

7

"only" six of its top thirty creditors are in New York, *see* Opp'n 24, that is six more creditors than are in Delaware. To attempt to make up for this, CRS points to the similar distance of the Courts to their respective airports and the less expensive hotels in Wilmington to conclude that "New York . . . provides no better venue for creditors." *See id*. at 25.

19. This logic is severely flawed. It is obviously more convenient for the six New York-based (and additional three Northern New Jersey-based) creditors to travel to this Court so that they do not need to get on a plane or stay in a hotel at all. Additionally, as the Trustee made clear in the Application, its ***largest*** creditors are in New York. *See* App. ¶ 56. CRS attempts to sidestep the significance of this breakdown because the largest claim (held by TSE) is disputed. CRS has it backwards: it is more likely that claimants with disputed claims will need to attend court, and will be inconvenienced by travel, than those with undisputed ones.

20. Finally, CRS' creditors prefer New York. On August 7, 2015, the SEC joined in the Trustee's Application because, among other things, it is a party-in-interest that is in this District. *See* [Dkt. No. 132, at 3]. On August 17, 2014, an *ad hoc* committee of CRS' unsecured creditors did not object to the transfer to New York. *See* [Dkt. No. 138]. The convenience of the creditors therefore tips the scale toward New York.

21. <u>CRS does not point to any Delaware-based witnesses.</u> Unable to find a Delaware hook beyond its incorporation, CRS asserts – without any explanation of who the witnesses may be or what they may testify to – that "any potential witnesses are located throughout the United States" and then concludes that "it is no less convenient for [these unknown witnesses] to travel to Delaware versus New York." *See* Opp'n at 25. Such an unsupported, conclusory statement cannot carry the day. Moreover, CRS fails to address the key witnesses that the Trustee anticipates will be integral in the CRS

8

(and TSE) cases – including CRS' majority owner Robert Cassera, its secured lender (Wells Fargo), its certified public accountants, and its management – who are all in New York.  *See* App. ¶ 58.  In fact, CRS anticipates that "a significant issue [in its cases] will be whether Wells Fargo, having been prepaid all principal and interest on its credit facility, may continue to hold millions of dollars in additional cash" as security.  *See* Opp'n at 12; *see id.* at 22-23.  Because these key parties are located in New York, the convenience of the witnesses counsels transfer.

22.    <u>The economic administration of the estate is served by transferring the CRS cases to this District because of this Court's knowledge of the facts.</u>  CRS argues that this Court has no learning curve because "Delaware has handled just as many cases, with just as many issues in New York[.]"  *See* Opp'n at 25.  While the Trustee does not dispute that "New York and Delaware are two of the most experienced and expert benches in corporate bankruptcy," *see id.*, that is immaterial to this Court's learning curve as to the ***facts***.  This Court is already familiar with CRS due to its interrelationship with TSE.  *See* App. ¶¶ 8, 15, 20-23, *supra* § II(A)(ii).

23.    <u>CRS concedes that it is "physically located in New York" and that its assets are not in Delaware.</u>  These factors too weigh in favor of New York.

24.    In conclusion, the Trustee has made a strong showing that the CRS cases should be transferred for the convenience of all parties.

25.    When reduced to its bare bones, the crux of the Opposition has nothing to do with venue at all.  CRS' "real dispute" is that it wants to assert claims against TSE, Opp'n at 1, and objects to the joint administration of the estates and a joint trustee.  *See id.* at 5, 11-12.  But neither issue is before the Court.  The Trustee and CRS will fight over whether the two are adverse or a single ball of wax another day.  What is clear today is

that it serves both justice and convenience for all decisions concerning the CRS cases to be made in this District.

## NOTICE

26.     Notice of this Reply will be provided by either: (i) e-mail; or by (ii) facsimile (if provided by parties who filed Notices of Appearance) to: (i) the United States Trustee; (ii) any parties-in-interest having filed a notice of appearance in this case; (iii) all parties requiring notice pursuant to the Rules; and (iv) counsel to CRS. The Trustee submits that no further notice need be provided.

## CONCLUSION

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order transferring the CRS chapter 11 cases to this Court. The Trustee further requests such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
         August 14, 2015

JAMES S. FELTMAN, not individually but solely in his capacity as Chapter 11 Trustee
By His Bankruptcy Counsel,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Albert Togut
ALBERT TOGUT
JEFFREY R. GLEIT
LAUREN L. PEACOCK
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000