**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

TS EMPLOYMENT, INC,

                         Debtor.

**NOT FOR PUBLICATION**

Case No. 15-10243 (MG)

Chapter 11

# MEMORANDUM OPINION AND ORDER GRANTING MOTION TO TRANSFER VENUE OF AFFILIATE CASES FROM DELAWARE TO NEW YORK

*A P P E A R A N C E S:*

TOGUT, SEGAL & SEGALL LLP
*Attorneys for James S. Feltman, Solely in His Capacity*
*as Chapter 11 Trustee*
One Penn Plaza, Suite 3335
New York, NY 10119
By:    Albert Togut, Esq.
        Jeffrey R. Gleit, Esq.
        Steven S. Flores, Esq.
        Lauren L. Peacock, Esq.

GELLERT SCALI BUSENKELL & BROWN, LLC
*Proposed Attorneys for the Debtors*
*Corporate Resource Services, Inc., et al.*
913 N. Market Street, 10th Floor
Wilmington, DE 19801
By:    Ronald S. Gellert, Esq. (*pro hac vice*)

DICKSTEIN SHAPIRO LLP
*Attorneys for the Ad Hoc Committee of Unsecured*
*Creditors of Corporate Resource Services, Inc., et al.*
1633 Broadway
New York, NY 10019
By:    Barry N. Seidel, Esq.
        Eric B. Fisher, Esq.
        Steven B. Smith, Esq.
        Evan J. Zucker , Esq.

U.S. SECURITIES AND EXCHANGE COMMISSION
*Attorneys for U.S. Securities And Exchange Commission*
Brookfield Place, 200 Vesey St., Suite 400
New York, New York 10281
By:    Neal Jacobson, Esq.
       Alan Maza, Esq.

PREET BHARARA
UNITED STATES ATTORNEY FOR THE SOUTHERN
DISTRICT OF NEW YORK
*Attorneys for the Internal Revenue Service*
86 Chambers Street, Third Floor
New York, NY 10007
By:    Monica P. Folch, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

   Pending before the Court is the motion (the "Motion," ECF Doc. # 127)[1] of the chapter 11 trustee (the "Trustee") of Debtor TS Employment, Inc. ("TSE") to transfer venue of the chapter 11 cases of Corporate Resource Services, Inc. ("CRS") and seven of its affiliated entities (together with CRS, the "Delaware Debtors") from the bankruptcy court in Delaware to this Court.[2] The Motion is based on section 1412 of title 28 of the United States Code and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 1014. The Securities Exchange

---

[1] References to "ECF Doc. # __" are to docket entries in Case No. 15-10243 (MG) before this Court, unless otherwise indicated.

[2] The Delaware Debtors and the case numbers for each in the files and records of the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") are as follows: CRS, Case No. 15-11546 (MFW); Accountabilities, Inc., Case No. 15-11547 (MFW); Corporate Resource Development, Inc., Case No. 15-11550 (MFW); Diamond Staffing Services, Inc., Case No. 15-11552 (MFW); Insurance Overload Services, Inc., Case No. 15-11548 (MFW); Integrated Consulting Services, Inc., Case No. 15-11549 (MFW); The CRS Group, Inc., Case No. 15-11551 (MFW); and TS Staffing Services, Inc., Case No. 15-11553 (MFW). CRS owns 100% of the equity interests of the other seven Delaware Debtors. *See* Declaration of Henry Ewen in Support of Corporate Resource Services, Inc. *et al.*'s Omnibus Memorandum of Law in Opposition to the Chapter 11 Trustee's Application to Transfer Venue of the Chapter 11 Cases of Corporate Resource Services, Inc. and its Affiliated Entities from the United States Bankruptcy Court for the District of Delaware to This District and All Joinders Thereto ¶ 3 (the "Ewen Decl.," ECF Doc. # 135, Ex. A). The Delaware Debtors' chapter 11 cases are jointly administered under the CRS case number (Case No. 15-11546). (*See* Case No. 15-11456 (MFW), ECF Doc. # 40.)

Commission filed a joinder to the Motion. (ECF Doc. # 132.) The Delaware Debtors filed an opposition (the "Opposition," ECF Doc. # 135.) The Ad Hoc Committee of Unsecured Creditors of Corporate Resource Services, Inc., *et al.* filed a reservation of rights but took no position on the venue transfer Motion. (ECF Doc. # 138.) The Trustee filed a reply. (ECF Doc. # 141.) The Internal Revenue Service (the "IRS") also filed a joinder in the Motion (the "IRS Joinder," ECF Doc. # 142).

Because TSE filed its chapter 11 case in this district before the Delaware Debtors filed their chapter 11 cases in Delaware, Bankruptcy Rule 1014(b) provides that this Court "may determine, in the interest of justice or for the convenience of the parties," FED. R. BANKR. P. 1014(b), whether to transfer the Delaware Debtors' cases to this district. No one disputes that the Delaware Bankruptcy Court has statutory venue under section 1408 of title 28 of the United States Code over the cases filed by the Delaware Debtors because CRS (and all but one of the Delaware Debtors) is incorporated in Delaware. Although the parties' dispute is cloaked in the question of whether venue should be transferred under section 1412 "in the interest of justice or for the convenience of the parties," 28 U.S.C. § 1412, the real issue here has little to do with whether to transfer venue to this Court. Rather, the crux of the parties' dispute is whether TSE's chapter 11 Trustee should be appointed as the chapter 11 Trustee of each of the Delaware Debtors if the cases are transferred here; an issue not presently before this Court.[3]

The Court held a hearing on the Motion on August 18, 2015 and announced its ruling from the bench, granting the Motion, with an Opinion to follow. For the reasons explained

---

[3] *See* Ewen Decl. ¶ 19 ("Even though keeping the Delaware Debtors['] cases in Delaware is the most cost-effective solution and provides the best change [*sic*] of maximizing recovery for its creditors, as a compromise the Delaware Debtors agreed to change the venue of their chapter 11 cases to New York on the sole condition that the TSE Trustee not serve as trustee for all of TSE and the Delaware Debtors.").

3

below, venue of the cases filed by the Delaware Debtors shall be transferred to this Court forthwith.

## I.     BACKGROUND

TSE filed its chapter 11 case in this Court on February 2, 2015 after it was "discovered" that TSE had failed to pay over $100 million of employee withholding taxes to the IRS and state tax authorities, as if a failure of that magnitude could be anything other than knowing and intentional. The Delaware Debtors filed their cases in the Delaware Bankruptcy Court on July 23, 2015. TSE is 100% owned by Robert Cassera ("Cassera"). CRS is a publicly traded corporation that is 89.7% owned by Cassera. TSE and the Delaware Debtors are "affiliates" under section 101(2) of the Bankruptcy Code.[4] *See* 11 U.S.C. § 101(2).

TSE, when it was operating—which it no longer is doing—was a "professional employer organization," or "PEO." TSE had only one customer—CRS. When CRS was operating, it contracted with third parties to provide staffing, recruiting, and related consulting services. At its peak, CRS provided approximately 30,000 temporary employees to CRS's contract counterparties. TSE handled the processing and payment of payroll and benefits, including worker's compensation insurance, for the temporary employees. TSE was also supposed to pay employee withholding taxes to state and federal taxing authorities; TSE was supposed to receive from CRS all amounts TSE paid to or for the benefit of the temporary employees (including the withholding taxes), along with TSE's fees. TSE and CRS, and their other affiliates, share the same office located at 160 Broadway, New York, New York, and they share (or at least did share) the same employees and the same outside accountants.

---

[4]     Although CRS disputes the "affiliate" relationship in its Opposition, the Court is unpersuaded. (*See* Opp. at 13.)

4

The United States Trustee in this district moved for the appointment of a chapter 11 trustee shortly after TSE's chapter 11 case was filed. After some brief skirmishing, on February 20, 2015, the Court entered a consent order directing the appointment of a chapter 11 trustee. On February 27, 2015, the Court entered an order approving the appointment of James S. Feltman as the chapter 11 Trustee.

What is beyond question is that a major fraud was perpetrated in failing to pay over $100 million of withholding taxes—who was responsible or culpable in the fraud remains to be established. CRS appeared by counsel at all (or nearly all) hearings in TSE's chapter 11 case since it was filed.

The Court need not tarry long to conclude that the interest of justice and the convenience of the parties will best be served by transferring the Delaware Debtors' cases to this Court. Despite the protestations to the contrary by the Delaware Debtors' counsel, filing the cases in Delaware could only have been done for one purpose—to prevent one court from overseeing these related cases. Having one court administer these cases is the most cost effective and efficient use of judicial resources.

## II.   DISCUSSION

The Trustee moves pursuant to Bankruptcy Rule 1014(b) to transfer the venue of CRS's bankruptcy case from the Delaware Bankruptcy Court to this Court. Bankruptcy Rule 1014(b) provides in part:

> If petitions commencing cases under the Code . . . are filed in different districts by, regarding, or against . . . (4) a debtor and an affiliate, the court in the district in which the first-filed petition is pending may determine, in the interest of justice or for the convenience of the parties, the district or districts in which any cases should proceed. The court may so determine on motion and after a hearing, with notice to the following entities in the affected cases: the United States trustee, entities entitled to notice under

5

> Rule 2002(a), and other entities as the court directs. The court may
> order the parties to the later-filed cases not to proceed further until
> it makes the determination.

FED. R. BANKR. P. 1014(b). Under the Bankruptcy Code, an "affiliate" is defined in part as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. § 101(2)(B). The term "entity" includes a "person," such as Cassera. *Id.* § 101(15). Cassera owns 100% of TS Employment and 89.7% of CRS. TS Employment and CRS are therefore "affiliates" under the Code. CRS, by way of its Opposition and the Delaware Bankruptcy Court's order granting joint administration, concedes that the remaining Delaware Debtors are affiliates of CRS. (*See* Opp. at 6; Case No. 15-11546 (MFW), ECF Doc. # 40.) As a result of CRS filing a bankruptcy petition in a different district, this Court—or the Court in which the first petition was filed—is the proper court to determine "the district or districts in which" the two entities cases shall proceed. FED. R. BANKR. P. 1014(b).

Consideration of the transfer of venue turns on the discretionary power granted bankruptcy courts by section 1412 of title 28 of the United States Code. *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (citations omitted). A case or proceeding commenced in a proper district may be transferred to another district if the court finds that the transfer would be in the interest of justice or for the convenience of the parties. *See* 28 U.S.C. § 1412. Section 1412 is worded in the disjunctive, allowing a case to be transferred under *either* the interest of justice rationale or the convenience of the parties rationale. *See generally In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012); *Dunmore*, 380 B.R. at 670;

6

*Enron Corp. v. Arora* (*In re Enron Corp.*), 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004). The decision to transfer venue is within the discretion of the court, as evidenced by the use of the permissive "may" in section 1412 and should be based on the facts underlying each particular case. *Dunmore*, 380 B.R. at 670; *Enron*, 317 B.R. at 638 & n.8; *see also Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990) (concluding that review should be on an individualized basis). The moving party has the burden to demonstrate by a preponderance of the evidence that the interest of justice or the balance of convenience weighs in favor of transfer. *Manville*, 896 F.2d at 1390; *Puerto Rico v. Commonwealth Oil Refining Co.* (*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1241 (5th Cir. 1979) ("*CORCO*"); *Patriot Coal*, 482 B.R. at 740; *Dunmore*, 380 B.R. at 670; *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.* (*In re Lionel Corp.*), 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982). This is "a heavy burden of proof," *Dunmore*, 380 B.R. at 670, because a debtor's choice of forum is "presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy," *Manville*, 896 F.2d at 1390–91. Thus, courts must cautiously exercise the power to transfer a case as a debtor's selection of a proper venue is entitled to great weight. *See Dunmore*, 380 B.R. at 675.

Courts often look to the criteria established in the circuit court decisions in *Manville* and *CORCO* when evaluating the interest of justice and convenience of the parties. Both *Manville* and *CORCO* affirmed bankruptcy court decisions denying change of venue motions, but both cases support granting the Motion in this case. In *Manville*, the court dealt with a motion to transfer venue of an adversary proceeding from New York to Louisiana; the main case was pending in New York. *Manville*, 896 F.2d at 1386–87. The Second Circuit affirmed the denial of the venue transfer motion, concluding that the bankruptcy court appropriately struck the

7

balance between the economic and efficient administration of the case and the convenience of the parties. *Id.* at 1391. Here, all of those factors point to administration of all of the cases in New York. The only connection to Delaware is the happenstance of CRS's incorporation in that state. In *CORCO*, the Fifth Circuit emphasized the place where the management of the debtor took place, *see CORCO*, 596 F.2d at 1242–44, 1247–48, a factor that unquestionably points to venue in New York for the Delaware Debtors' cases as well.

The interest of justice prong provides a broad and flexible standard. *Patriot Coal*, 482 B.R. at 739; *Dunmore*, 380 B.R. at 671; *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002). "The court considers whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed." *Enron*, 317 B.R. at 638–39. Courts also consider the impact of the learning curve if the case is transferred. *Dunmore*, 380 B.R. at 672 (citation omitted). "The learning curve analysis involves consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue." *In re Enron Corp.*, 284 B.R. 376, 404 (Bankr. S.D.N.Y. 2002). "In addition, courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so." *Dunmore*, 380 B.R. at 672 (citation omitted).

"The convenience of parties prong has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate;

8

and (vi) necessity for ancillary administration if liquidation should result." *Id.*  Among these, the economic and efficient administration of the estate is the factor given the greatest weight. *Id.*; *Enron*, 274 B.R. at 343.

Applying either the interest of justice or the convenience of the parties test here, the Court concludes that TSE's Trustee has established by a preponderance of the evidence that venue of the Delaware Debtors' cases should be transferred to New York.  Nothing other than the Delaware Debtors' selection of Delaware—a choice obviously made to complicate administration of these affiliates' cases—supports leaving venue of the Delaware Debtors' cases in Delaware.

All of these cases are inextricably intertwined. *See, e.g.*, *Enron*, 284 B.R. at 398 (finding affiliates "intertwined" such that circumstances dictated venue transfer); *In re Andover Data Servs., Inc.*, 35 B.R. 297, 301 (Bankr. S.D.N.Y. 1983) (transferring venue to first-filed jurisdiction of affiliate where, among other things, action in the first-filed case affected the second-filed entity).  As the IRS argues in its joinder in the Motion, "TSE is liable for non-payment of employee withholding taxes, and CRS, as the employer of individuals whose withholding taxes were not paid, may also be responsible for that tax liability.  (IRS Joinder at 2 (citing *United States v. Huff*, No. 12 Cr. 750 (NRB), 2014 WL 7192410, at *3–4 (S.D.N.Y. Dec. 17, 2014) (companies "who outsource tax and payroll services do not relinquish all responsibility for the payment of taxes" and may be held liable for nonpayment of taxes); *United States v. Total Employment Co.*, 305 B.R. 333 (M.D. Fla. 2004); *United States v. Garami*, 184 B.R. 834 (M.D. Fla. 1995)).)

At bottom, the questions will have to be answered in all of these cases—what happened to the $100 million and who is responsible for the shortfall?  These questions should be

answered, if possible, in one bankruptcy court.[5] Bankruptcy distributions to the creditors of TSE and the Delaware Debtors, to the extent property is recovered, may well depend on the answer to these questions.

With respect to the convenience of the parties, the Motion correctly recites:

> virtually all of the relevant parties have substantial connections to New York, with virtually none to Delaware.   To name a few,
>
> - CRS' largest creditor, TSE, operated in New York and is administered here,
> - CRS' only secured lender is in New York,
> - 94.46% of CRS' unsecured debt of its top 30 creditors is held by New Yorkers,
> - CRS' principal office, where it keeps its books and records, is in New York,
> - CRS' certified public accountants are in New York, and
> - two of CRS' law firms are in New York.

(Motion at 3.)

The selection of the venue most consistent with the interest of justice and the convenience of the parties simply is not a close question—all of the cases belong in New York. The Delaware Debtors' decision to file in Delaware was a cynical effort to avoid the judicial scrutiny that accompanies having all of these cases administered in the same court. The Delaware Debtors' decision to fight the venue transfer motion has unnecessarily resulted in incurring additional expenses when the real issue—not raised by the Motion—has to do with the appointment of a chapter 11 trustee.

---

[5]   This statement obviously does not exclude the possibility that other civil, regulatory, or criminal cases or proceedings are also possible.

Once all of the cases are here, the following questions will have to be addressed very soon:

(1) Should all of the cases be jointly administered?
(2) Should a chapter 11 trustee be appointed in the additional cases?
(3) May the same chapter 11 trustee oversee all of the cases in light of the claims between the debtors?
(4) May the debtors' estates in all of these cases be substantively consolidated?
(5) Should any or all of the cases be converted to cases under chapter 7?
(6) How will these cases be funded if they remain in chapter 11?

The Court will enter a separate order scheduling a case management conference in all of the cases.

### III.    CONCLUSION

For the reasons explained above, the Trustee's Motion to transfer venue of the cases filed by the Delaware Debtors in the Delaware Bankruptcy Court is **GRANTED**.

**IT IS SO ORDERED.**

Dated:    August 18, 2015
          New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge

11