JENNER & BLOCK LLP
Richard Levin
Carl N. Wedoff
919 Third Avenue
New York, NY 10022
(212) 891-1600

Vincent E. Lazar
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

*Proposed Special Litigation Counsel for James S.
Feltman, Not Individually But Solely in His Capacity
as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>TS EMPLOYMENT, INC.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 15-10243 (MG) |
| In re<br><br>CORPORATE RESOURCE SERVICES, INC., *et al.*,<br><br>                Debtors. | Chapter 11<br><br>Case No. 15-12329 (MG)<br><br>Jointly Administered |

**CHAPTER 11 TRUSTEE'S APPLICATION FOR
AN ORDER AUTHORIZING THE *NUNC PRO
TUNC* EMPLOYMENT AND RETENTION OF
<u>JENNER & BLOCK LLP AS SPECIAL LITIGATION COUNSEL</u>**

James S. Feltman, not individually but solely in his capacity as chapter 11 trustee

(the "Trustee") of both (i) TS Employment, Inc. ("TSE"), and (ii) Corporate Resource

Services, Inc. ("CRS"), and CRS's subsidiaries Accountabilities, Inc., Corporate Resource

Development Inc., Diamond Staffing Services, Inc., Insurance Overload Services, Inc., Integrated Consulting Services, Inc., The CRS Group, Inc. and TS Staffing Services, Inc. (together with CRS, the "CRS Debtors" and, collectively with TSE, the "Debtors") makes this joint application for entry of an order in both the TSE case and the cases of the CRS Debtors, substantially in the forms attached hereto as Exhibits A-1 and A-2, authorizing him to employ and retain Jenner & Block LLP ("Jenner") as special litigation counsel ("Special Litigation Counsel") in each of the above-captioned chapter 11 cases. In support of this Application, the Trustee submits the Affidavit of Vincent E. Lazar, a Jenner partner, annexed hereto as Exhibit B (the "Lazar Declaration"), and the Declaration of James S. Feltman, annexed hereto as Exhibit C (the "Feltman Declaration"), and respectfully states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334 and the "Amended Standing Order of Reference" for the Southern District of New York, dated January 31, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this case and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 327, 328, and 330 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

2

## BACKGROUND

3.  On February 2, 2015 (the "Petition Date"), TSE filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

4.  On February 12, 2015, the United States Trustee for the Southern District of New York moved for appointment of a chapter 11 Trustee for TSE (TSE Dkt. No. 21). On February 20, 2015, the Court entered the *Consent Order Directing the Appointment of a Chapter 11 Trustee* (TSE Dkt. No. 31).

5.  On February 27, 2015, the U.S. Trustee appointed Mr. Feltman as Chapter 11 Trustee in the TSE case (the "TSE Trustee") (TSE Dkt. No. 33), and the same day, the Court entered an order approving Mr. Feltman's appointment (TSE Dkt. No. 36).

6.  On July 23, 2015, CRS and the CRS Debtors commenced voluntary Chapter 11 cases in the Bankruptcy Court for the District of Delaware.

7.  On August 18, 2015, this Court transferred the CRS Debtors' cases to this Court (TSE Dkt. No. 146).

8.  On September 22, 2015, the United States Trustee appointed Mr. Feltman as chapter 11 Trustee for the CRS Debtors' cases (the "CRS Trustee"). (CRS Dkt. No. 143). On September 25, 2015, the Court approved the appointment (CRS Dkt. No. 148), which Mr. Feltman accepted on October 1, 2015 (CRS Dkt. No. 149).

9.  The Court approved the *nunc pro tunc* retention of Togut, Segal & Segal LLP ("TSS") as general bankruptcy counsel to the TSE Trustee on April 14, 2015 (TSE Dkt. No. 88) and as general bankruptcy counsel to the CRS Trustee on December 21, 2015 (CRS Dkt. No. 207).

10. The CRS Debtors' cases are being jointly administered. The TSE case is being separately administered.

## RELIEF REQUESTED

11. By this Application, the Trustee seeks entry of an order authorizing him to employ and retain Jenner *nunc pro tunc*[1] as Special Litigation Counsel to investigate, evaluate and prosecute claims against certain persons and entities described below on behalf of one or more of the Debtors' estates. As detailed more fully below, Jenner's employment will consist of two phases: (i) an initial investigation and evaluation of potential claims, for which Jenner will be compensated on an hourly basis by the applicable Debtor and will be entitled to seek and receive compensation under sections 330 and 331 of the Bankruptcy Code, payment of which shall not exceed $750,000 in the aggregate, and (ii) prosecution of claims, for which Jenner will be entitled to compensation solely on a contingency fee basis pre-approved under section 328 of the Bankruptcy Code.

## JENNER'S RETENTION

12. The Debtors' respective cases were commenced following the discovery that TSE had failed to remit more than $100 million in payroll-related taxes to federal and state taxing authorities. During the course of the respective cases, the Trustee and his

---

[1] Jenner initially commenced work on the Trustee's behalf on September 27, 2016, but additional work and the filing of this application were delayed while the fee arrangement described herein was crafted and negotiated. The Trustee therefore seeks approval of Jenner's retention *nunc pro tunc* to September 27, 2016, or such other date as the Court permits.

4

general bankruptcy counsel TSS have concluded, subject to further investigation and evaluation, that the Debtors' estates may be entitled to assert claims against certain of the Debtors' respective insiders, affiliates, lenders, and pre-petition professionals. The Trustee and TSS also concluded that it was in the best interests of the Debtors' respective estates that the Trustee retain special counsel to conduct a further investigation and evaluation of the potential claims, and to prosecute some or all of those claims for the benefit of the Debtors' respective estates and their creditors on a contingency fee basis.

13. The Trustee and Jenner have agreed that Jenner will advise and represent the Trustee in connection with, and the scope of Jenner's engagement and duties shall relate solely to, the investigation, evaluation and prosecution of claims against the Debtors' insiders, affiliates, lenders, and professionals, and such additional persons as may be identified during the course of Jenner's investigation ("Special Litigation Matters"). The scope of Jenner's representation will not duplicate the efforts of the Trustee's general chapter 11 counsel, TSS (or any other counsel that has been retained by the Trustee in these cases).

14. Jenner is well qualified to represent the Trustee in these chapter 11 cases. Jenner attorneys have extensive experience representing bankruptcy trustees in complex bankruptcy investigation and litigation matters, and regularly represent bankruptcy trustees in high-profile and cutting-edge adversary proceedings and related appeals. Among other matters, Jenner attorneys have recovered more than $500 million for the chapter 11 trustee and liquidation trustee in *In re Sentinel Management Group Inc.*, No. 07 B 14987 (Bankr. N.D. Ill.), including recoveries on account of claims against Sentinel's

5

insiders, professionals and lenders; obtained a $272+ million judgment in favor of a chapter 7 trustee in *In re Emerald Casino, Inc.*, No. 02 B 22977 (Bankr. N.D. Ill.), based on claims against the debtor's former directors and officers; represent the chapter 7 trustee in *In re Lancelot Investors Fund, L.P.*, No. 08 B 28225 (Bankr. N.D. Ill.), a hedge fund liquidation involving $1.8 billion in assets and numerous avoidance actions; obtained a $43 million avoidance action judgment for the chapter 7 trustee in *In re Consolidated Indus. Corp.*, No. 98-bk-40533 (Bankr. N.D. Ind.), against the debtor's owners; and acted as special counsel to the chapter 7 trustee (Albert Togut of TSS) in *In re Refco, LLC*, No. 05-60134 (RDD) (Bankr. S.D.N.Y.), where the trustee distributed billions of dollars to customers and creditors. Several of these cases involved contingency fee arrangements that were approved by the bankruptcy court and/or trustee.

15. In addition, several Jenner partners have served as chapter 11 trustees in significant cases, and two Jenner partners have served as chapter 7 trustees since the 1980s. Jenner attorneys also have been employed in the past by the Trustee on other bankruptcy cases where the Trustee had been appointed to serve as chapter 11 or 7 trustee, and they enjoy an excellent working relationship with the Trustee.

16. No other law firm has been retained to investigate and prosecute the Special Litigation Matters. In addition to TSS, the Court also has approved the retention of certain other firms for discreet services. Because of their well-defined roles, Jenner's work as Special Litigation Counsel will be complementary rather than duplicative of the services already performed, and to be performed in the future, by TSS, other retained counsel, and other professionals as may be retained by the Trustee. Jenner has acted as special

6

counsel in other cases where TSS served as general bankruptcy counsel to the bankruptcy trustee, and the firms are well positioned to coordinate with each other and avoid any unnecessary duplication of effort.

17. Jenner intends to seek compensation for services rendered and expenses incurred in both the TSE case and the CRS Debtors' cases, separately, in accordance with the Engagement Letter between the Trustee and Jenner attached as Exhibit B-1 to the Lazar Declaration, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of the Court, and except as otherwise provided for herein the U.S. Trustee Guidelines (the "Fee Guidelines").

18. Specifically, the Trustee and Jenner have agreed to a compensation structure that is split between an hourly rate structure (with a cap on payment of fees) and a variable contingency fee arrangement.

19. During the initial investigation and evaluation of potential claims, Jenner's fees will be based upon hours charged, recorded in tenth of an hour increments, at Jenner's scheduled rates which are in effect at the time the services are performed plus expenses incurred during the investigation and evaluation of claims. The Trustee and Jenner further have agreed that the overall actual amount of compensation Jenner may receive from the estates for its fees incurred related to the investigation and evaluation of potential claims shall not exceed $750,000. Although this $750,000 cap on payment of fees incurred related to the investigation and evaluation of potential claims applies across both the TSE case and the CRS Debtors' cases, Jenner will keep separate time records for the TSE case and the CRS Debtors' cases and will submit separate fee applications in both

7

cases, which will be paid by the applicable estate that incurred such fees. To extent work is performed for the benefit of more than one estate, the time will be allocated in Jenner's fee applications.

20. Jenner's hourly rates are set forth in the Lazar Declaration and are periodically adjusted, generally at the beginning of a calendar year. The hourly rates and corresponding rate structure Jenner will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Jenner typically uses in other litigation and bankruptcy matters, regardless of whether a fee application is required.

21. As claims are identified and evaluated during the course of Jenner's investigation, Jenner and the Trustee will determine whether they should be prosecuted by Jenner on a contingency fee basis, or whether it would be more appropriate for other counsel to prosecute certain of the claims and/or that they be prosecuted on different basis. For any claims the Trustee and Jenner conclude and agree should be prosecuted by Jenner on a contingency fee basis, except as otherwise agreed by the Trustee and Jenner and approved by the Court, Jenner shall not be entitled to compensation on an hourly basis, but instead shall be entitled to a percentage contingency fee ranging from 7.5% to 34% of net cash recoveries paid to either the TSE estate of the CRS Debtors' estates, depending on the nature of the claim, the stage of the litigation (if any) and other factors. A summary of the calculation of the applicable contingency fee ("Contingency Fee") follows:

| **Recoveries From Sources Other Than Lenders** | |
|---|---|
| First $15 million in net recoveries | 34% of the net recoveries |
| Next $85 million in net recoveries (recoveries of up to $100 million) | 20% of the net recoveries |
| Recoveries over $100 million | 10% of the net recoveries |

| | **Recoveries From Lenders** | | |
|---|---|---|---|
| | Pre-discovery | After commencement of MSJ Briefing | After trial commences |
| First $10 million in recoveries | 25% of net recoveries | 30% of net recoveries | 34% of net recoveries |
| Next $40 million in net recoveries (recoveries of up to $50 million) | 15% of net recoveries | 25% of net recoveries | |
| Next $50 million in recoveries (recoveries of up to $100 million) | 7.5% of net recoveries | 15% of net recoveries | 25% of net recoveries |
| Recoveries over $100 million | 5% of net recoveries | 15% of net recoveries | 20% of net recoveries |

22.     The proposed Contingency Fee was the subject of extensive arms-length negotiations between the Trustee and Jenner over the course of several weeks, and was adjusted downwards following discussions with parties-in-interest.  The scope of Jenner's representation and compensation does not include any appeals.

23.     In addition to fees, it is Jenner's policy to charge its clients for out-of-pocket expenses and charges that Jenner incurs in connection with the representation. The Debtors' estates shall be responsible for the payment of all expert fees, maintaining and searching document databases (including all costs related thereto), and the payment of all other expenses related to prosecution of any claims.

24. Jenner will make any requests for compensation and reimbursement of expenses for the initial investigation and evaluation phase under sections 330 or 331 of the Bankruptcy Code based on time recorded on an hourly basis by filing fee applications in both the TSE case and the CRS Debtors' cases for the specific fees and expenses attributable to each case. Any compensation and reimbursement for expenses incurred that the Court allows shall be payable as an administrative expense of the applicable estate under section 503(b) of the Bankruptcy Code from funds on hand in the applicable Debtors' estates, subject to the overall $750,000 cap on payment of fees.

25. The hourly rate structure is appropriate and is comparable to the rates that other comparable counsel would charge to do work substantially similar to the work Jenner will perform as Special Litigation Counsel. The Trustee respectfully submits that Jenner's rates and reimbursement policies, as stated in the Lazar Declaration, are reasonable.

26. With respect to the Contingency Fee matters, Jenner also shall file separate requests for compensation in both the TSE case and the CRS Debtors' cases, but will not be required to establish the elements set forth in section 330 of the Bankruptcy Code and the Fee Guidelines applicable to matters billed on an hourly basis. Rather, the Trustee seeks entry of an order pre-approving the Contingency Fee arrangement under section 328(a) of the Bankruptcy Code. and requiring that Jenner seek payment of any Contingency Fee by submitting an application with the Court in the applicable case under the standards of section 328(a) of the Bankruptcy Code, whereby a timely objection thereto made by a party in interest may be considered solely if the terms and conditions

of Jenner's retention "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and condition." 11 U.S.C. § 328(a). Jenner will keep contemporaneous records of the time expended in connection with providing such Contingency Fee services, but does not intend to submit those time records as part of its compensation application.

27. To the best of the Trustee's knowledge, Jenner's attorneys do not hold or represent any interest adverse to the Debtors' estates. More specifically, as set forth in the Lazar Declaration, Jenner and its attorneys: (a) are not creditors, equity holders or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of the Debtors' chapter 11 petitions, trustees, officers or employees of the Debtors; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

28. As set forth in the Lazar Declaration, Jenner has affirmed to the Trustee that it has not represented and will not represent any parties other than the Trustee in these cases or in connection with any matters that would be adverse to the Debtors' estates arising from, or related to, these cases.

29. Based upon the Lazar Declaration, Jenner is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code, does not hold or represent an interest adverse to the Debtors' chapter 11 cases, and Jenner's attorneys do not hold or represent any interest adverse to the Debtors' chapter 11 cases or their estates. Jenner will conduct an ongoing review of its records to ensure that no conflicts or other disqualifying

11

circumstances exist or arise. If any new facts or circumstances are discovered, Jenner will supplement its disclosure to the Court.

## BASIS FOR RELIEF

30. The Trustee seeks retention of Jenner as his Special Litigation Counsel pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

31. The Trustee seeks pre-approval of the Contingency Fee under section 328(a) of the Bankruptcy Code, under which a "trustee . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). *See Riker, Danzig, Scherer, Hyland & Perretti v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F.3d 228, 232-234 (2d Cir. 2009) (affirming pre-approval of special litigation counsel's contingency fee arrangement pursuant to section 328(a) and noting that "section 328(a) permits a bankruptcy court to forgo a full post-hoc reasonableness inquiry if it pre-approves the 'employment of a professional person under section 327") (citations omitted).

32. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee

33. The aforementioned requirements have been satisfied by this Application, the Lazar Declaration, and the Feltman Declaration. The Trustee submits that the retention and employment of Jenner as Special Litigation Counsel to the Trustee is warranted.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

34. The applicant statement referenced in Part D.1 of the Appendix B to the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines") is addressed in the Lazar Declaration, annexed as <u>Exhibit B</u> in support of this Application. The verified client statement referenced in Part D.2 of the U.S. Trustee Guidelines is addressed in the Feltman Declaration, annexed as <u>Exhibit C</u> in support of this Application.

35. Section D.1 of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 requests the following information:

(a) Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response: Yes. Jenner has agreed that it shall not be paid more than $750,000 for its work during the claim investigation and evaluation stage of the representation. Further, Jenner has agreed to a contingency fee arrangement for work done in connection with the prosecution of any claims.

(b) Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response: No.

(c) If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response: Not applicable.

(d) Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response: Yes. The Trustee has approved Jenner's budget and staffing plan, which is reflected in the $750,000 investigation payment cap and the contingency fee arrangement for the prosecution of claims determined and agreed that they should be prosecuted by Jenner. The Trustee and Jenner have concluded that the investigation fee payment cap and contingency fee arrangement obviate the need for a more detailed budget that would be appropriate in other cases billed on an hourly basis.

## NOTICE

36. Notice of this Application will be given to: (a) the United States Trustee for the Southern District of New York; (b) counsel for the Debtors; and (c) all parties who

have filed a Notice of Appearance in this case. The Trustee submits that under the circumstances, no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order in both the TSE case and the CRS Debtors' cases, substantially in the forms annexed hereto as Exhibits A-1 and A-2, granting the relief requested in this Application and such other and further relief as may be just and proper.

Dated:    New York, New York
           January 20, 2017

/s/ James S. Feltman
James S. Feltman
TSE Trustee

/s/ James S. Feltman
James S. Feltman
CRS Trustee