**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| TS EMPLOYMENT, INC., | Case No. 15-10243 (MG) |
| Debtor. | |
| In re | Chapter 11 |
| CORPORATE RESOURCE SERVICES, INC., *et al.*, | Case No. 15-12329 (MG) |
| | (Jointly Administered) |
| Debtors. | |

**DECLARATION OF VINCENT E. LAZAR IN**
**SUPPORT OF CHAPTER 11 TRUSTEE'S APPLICATION**
**FOR AN ORDER AUTHORIZING THE *NUNC***
***PRO TUNC* EMPLOYMENT AND RETENTION OF**
**JENNER & BLOCK LLP AS SPECIAL LITIGATION COUNSEL**

I, Vincent E. Lazar, declare the following under penalty of perjury:

1.      I am a partner of Jenner & Block LLP ("Jenner"), a law firm with offices in Chicago, Illinois; Los Angeles, California; New York, New York; Washington, D.C.; and London, England. I am currently resident in Jenner's Chicago office. I am a member in good standing of the Bar of the States of New York and Illinois, and I am duly authorized to make this Declaration on behalf of Jenner.

2.      I am authorized to submit this Declaration to provide the disclosures required under Rule 2014(a) of the Federal Rules of Bankruptcy Procedure and Rule 2014-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York in

connection with the joint Application, dated January 20, 2017 (the "Application")[1] of

James S. Feltman, not individually but solely in his capacity as chapter 11 trustee (the

"Trustee") of both (i) TS Employment, Inc. ("TSE"), and (ii) Corporate Resource Services,

Inc. ("CRS"), and CRS's subsidiaries Accountabilities, Inc., Corporate Resource

Development Inc., Diamond Staffing Services, Inc., Insurance Overload Services, Inc.,

Integrated Consulting Services, Inc., The CRS Group, Inc. and TS Staffing Services, Inc.

(together with CRS, the "CRS Debtors" and, collectively with TSE, the "Debtors") for

entry of an order approving the Trustee's retention of Jenner as special litigation counsel

("Special Litigation Counsel") in each of the above-captioned chapter 11 cases on the

terms and conditions set forth in the Application and herein and in compliance with

sections 327, 328, and 330 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3.     Unless otherwise stated in this Declaration, I have personal knowledge of

the facts set forth herein. To the extent any information disclosed herein requires

amendment or modification upon Jenner's completion of further review or as additional

information becomes available to it, a supplemental declaration will be submitted to the

Court reflecting such amended or modified information.

### Qualifications

4.     As set forth in the Application, Jenner is well qualified to represent the

Trustee in the Debtors' Chapter 11 cases. Jenner has extensive experience representing

bankruptcy trustees in complex bankruptcy investigation and litigation matters, and

---

[1]     Capitalized terms not otherwise defined herein shall take the meanings ascribed to them in the Application.

regularly represents bankruptcy trustees in high-profile and cutting-edge adversary proceedings and related appeals.

### Scope of Jenner's Retention

5.      The Trustee and Jenner have agreed that Jenner will advise and represent the Trustee in connection with, and the scope of Jenner's engagement and duties shall relate solely to, the investigation, evaluation and prosecution of claims against the Debtors' respective insiders, affiliates, lenders, and professionals, and such additional persons as may be identified during the course of Jenner's investigation ("Special Litigation Matters").

6.      No other law firm has been retained to investigate and prosecute the Special Litigation Matters. The Court approved the *nunc pro tunc* retention of Togut, Segal & Segal LLP ("TSS") as the TSE Trustee's general bankruptcy counsel in the TSE case on April 14, 2015 (TSE Dkt. No. 88) and as general bankruptcy counsel to the CRS Trustee in the CRS Debtors' cases on December 21, 2015 (CRS Dkt. No. 207). The Court also has approved the retention of certain other firms for discreet services.  Because of their well-defined roles, Jenner's work as Special Litigation Counsel will be complementary rather than duplicative of the services already performed, and to be performed in the future, by TSS, other retained counsel, and other professionals as may be retained by the Trustee.

7.      Jenner will use reasonable efforts to coordinate with the Trustee's other retained professionals to avoid duplication of services. Jenner has acted as special counsel in other cases where TSS served as general bankruptcy counsel to the bankruptcy trustee,

and the firms are well positioned to coordinate with each other and avoid any unnecessary duplication of effort.

### Jenner's Conflicts Checks Procedures and Disinterestedness

8.      In connection with its proposed retention by the Trustee, Jenner undertook to determine whether it had any conflicts or other connections that might cause it to hold or represent an interest adverse to the Debtors' estates with respect to the matters on which Jenner is to be employed. The Trustee provided, at Jenner's request, a list of entities that may have contacts with the Debtors or be parties in interest in these chapter 11 cases, which Jenner supplemented with a list of all creditors that filed proofs of claims in the TSE and CRS Debtors' cases (collectively, the "Parties in Interest").   A list of the Parties in Interest searched by Jenner is attached as Exhibit B-2.

9.      In the ordinary course of business, Jenner requires its professionals, before accepting the representation of a new client or the representation of an existing client in a new matter, to perform a conflict check. Jenner's conflict check procedures include a review of a database that includes every matter on which Jenner is or at one time was retained and, in each instance, to the extent known, includes the identity of related and adverse parties. Jenner regularly updates this database. Following those procedures, I asked Jenner personnel to compare the names of Parties in Interest against its database for all Jenner clients and former clients who were clients at any time in the past three years, to research information about affiliates of the listed entities, to distribute email inquiries to all Jenner attorneys, and to make follow-up inquiries.

4

10.     Based upon information ascertained using the foregoing procedures, Jenner and its attorneys are not providing and will not provide any representation or advice to any of the entities listed on the Parties in Interest list, including any who are current clients, for any matter arising in or in connection with the TSE chapter 11 case or the CRS Debtors chapter 11 cases, and has not provided any such services.

11.     For disclosure purposes, Jenner identified the following Parties in Interest that Jenner represents in matters unrelated to the Debtors or their estates: Commonwealth Edison Co.; Synchrony Financial; Jackson Lewis LLP; BBVA Bank (New York Branch); TD Ameritrade Holding Corp.; CRC Insurance Services, Inc.; Sterling Capital Ltd.; Sterling Partners; JP Morgan Chase; Capital One Finance Corp.; Banco Santander Suisse S.A.; and Bank of Montreal. Jenner also identified that it represents affiliates of the following Parties in Interest in matters unrelated to the Debtors or their estates: Pacific Bell; Sprint; and WM Bolthouse. In addition, one of Jenner's partners has been appointed as a monitor over Citibank N.A., a Party in Interest, but Jenner's representation in that matter is unrelated to the Debtors or their estates. None of the clients identified in this paragraph represent more than 1% of Jenner's annual revenue.

12.     We have not been asked to represent the Trustee in any matters adverse to the foregoing clients, and none of them are contemplated to be the subject of any of Special Litigation Matters proposed to be investigated and/or prosecuted by Jenner. Jenner cannot be adverse to any of its clients, including those identified in the foregoing paragraph (and irrespective of the percentage of Jenner's revenue that they represent), absent the client's consent.  I understand that TSS, the Trustee's general bankruptcy

counsel, may and is willing to represent the Trustee in any matters adverse to any of these clients.

13.     For additional disclosure purposes, Jenner previously has been retained by the Trustee in other chapter 11 or 7 cases; Jenner or Jenner clients have retained him, his current employer (Duff & Phelps), his former employer (Mesirow Financial) and/or members of those firms as expert witnesses or financial advisors in other cases; and he currently is retained as an expert witness in a pending case where Jenner represents the trustee of a liquidation trust.  Jenner also previously was retained by Albert Togut of TSS in a case where Mr. Togut acted as chapter 7 trustee.

14.     Jenner's practice encompasses the representation of many entities, some of which may be or may become parties in interest without Jenner's knowledge.  Further, as part of its practice Jenner represents clients in numerous matters involving other law firms, financial advisory firms and professionals in either adverse and non-adverse roles, some of which may represent the Debtors, creditors, or parties in interest, or themselves be creditors or parties in interest in these chapter 11 cases, or employ persons with whom Jenner attorneys have personal or familial relationships.  Although it is not practicable for Jenner to identify all such connections, except as otherwise disclosed herein I am unaware of any such connections that are material, and believe that none of them would prevent Jenner from being a "disinterested person," as defined in section 101(14) of the Bankruptcy Code; would involve the holding or representation of an interest adverse to the Debtors' respective estates; or would create a conflict of interest with respect to this employment.

15.     I am not related to, and, to the best of my knowledge, no other attorney at Jenner is related to, any United States Bankruptcy Judge for the Southern District of New York, any of the District Judges for the Southern District of New York, the United States Trustee for this Southern District of New York, or any employee in the Office of the United States Trustee for this Southern District of New York. Accordingly, I submit that Bankruptcy Rule 5002 would not prohibit employment of Jenner as special litigation counsel with respect to the Special Litigation Matters.

16.     Based on the foregoing, I believe that Jenner is a "disinterested person", as defined in section 101(14) of the Bankruptcy Code, that Jenner does not hold or represent any interest adverse to the Debtors' estates, and that Jenner's partners, associates, counsel, and special attorneys do not represent in other matters parties with any interest adverse to the Debtors' estates, except as otherwise specified in this Declaration. Accordingly, I submit that Jenner is not disqualified for employment by the Trustee under section 327 of the Bankruptcy Code to advise and represent the Trustee as special litigation counsel with respect to the Special Litigation Matters.

17.     To the extent that Jenner discovers any facts bearing on matters described herein, Jenner will supplement the information contained in this Declaration.

### Jenner's Compensation

18.     Jenner intends to seek compensation for services rendered and expenses incurred in both the TSE case and the CRS Debtors' cases, separately, in accordance with the Engagement Letter between Jenner and the Trustee, attached hereto as Exhibit B-1, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable

orders of the Court, and except as otherwise provided for in the Application and herein, the U.S. Trustee Guidelines (the "Fee Guidelines").

19.     The Trustee and Jenner have agreed to a compensation structure that is split between an hourly rate structure (with a fee payment cap) and a variable contingency fee structure depending (among other factors) on the stage of Jenner's work.

Investigation and Evaluation of Claims

20.     In connection with the initial investigation and evaluation of potential claims, Jenner's fees will be based upon hours charged, recorded in tenth of an hour increments, at Jenner's scheduled rates which are in effect at the time the services are performed plus expenses incurred during the investigation and evaluation of claims. The Trustee and Jenner have agreed that the actual amount of compensation Jenner may receive from the estates for its fees incurred related to the investigation and evaluation of potential claims shall not exceed $750,000. Although this $750,000 cap on payment of fees incurred related to the investigation and evaluation of potential claims applies across both the TSE case and the CRS Debtors' cases, Jenner will keep separate time records for the TSE case and the CRS Debtors' cases and submit separate fee applications in both cases, which will be paid by the estate for whose benefit the fees were incurred.  To extent work is performed for the benefit of more than one estate, the time will be allocated in Jenner's fee applications.

21.     Jenner will charge for these legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect as of January 1, 2017.  My current

hourly rate is $1,025.00.  The ranges of ordinary and customary hourly rates in effect as

of January 1, 2017 for other Jenner professionals are:

| | |
|---|---|
| Partners | $770 to $1250 |
| Counsel | $625 to $750 |
| Associates | $445 to $795 |
| Staff Attorneys | $380 to $480 |
| Discovery Attorneys | $175 |
| Electronic Litigation Support | $365 |
| Paralegals | $305 to $365 |
| Project Assistants | $205 to $215 |

22.    The charges for the attorneys who will render services to the Trustee will

be based upon actual time spent and upon the experience and expertise of the attorney

or legal assistant involved. The hourly rates set forth above are subject to periodic

adjustments (generally on January 1 of each year) to reflect economic and other

conditions.[2]

23.    Jenner may also retain and use certain contract attorneys not regularly

employed by Jenner. Based on past experience, I expect hourly, non-overtime rates for

such contract attorneys to be in the range of $50 to $65, depending on market

conditions. Jenner will not charge any markup to the Trustee with respect to fees billed

---

[2] For example, like many similar law firms, Jenner increases the hourly billing rate of attorneys and paraprofessionals yearly in the form of: (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective November 1, 2013. Jenner & Block has agreed to provide at least ten business days' notice to the Debtors and the U.S. Trustee before implementing any periodic increases and has agreed to file such notice with the Court.

by any contract attorneys, but will seek reimbursement for actual costs only. Moreover, any contract attorneys or non-attorneys the Trustee retains in connection with work performed by Jenner will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

24.    The hourly rates set forth above are consistent with the rates that Jenner charges other comparable clients for similar services, whether in or outside of chapter 11, regardless of the location of the client or the court in which a matter is pending. The hourly rates listed above are appropriate and not significantly different from (a) the rates that Jenner & Block charges for other similar types of representations or (b) the rates that other counsel of similar expertise and experience would charge to do work similar to the work Jenner & Block will perform in these chapter 11 case.

25.    It is Jenner's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone conference call and international call charges, mail, express mail, and overnight delivery service charges, special or hand delivery charges, document retrieval charges, photocopying charges, charges for mass mailings (including envelopes and labels) provided by Jenner to outside copying services, travel expenses, expenses for "working meals," computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial and other overtime. Jenner will charge these expenses, to the applicable Debtors, in a manner and at rates consistent with charges made generally to Jenner's other clients and within the guidelines set forth in Rule 2014-1 of the Local Rules and all amendments and supplemental standing orders of

the Court. Jenner believes that it is more appropriate to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients. Jenner does not charge clients for office supplies.

26.    Notwithstanding the foregoing and consistent with the Local Rules, Jenner & Block will charge no more than $0.10 per page for black-and-white photocopying and no more than $0.50 per page for color copies. Jenner & Block does not charge its clients for domestic facsimile transmissions or for office supplies and will not seek reimbursement for them in these cases.

27.    Jenner will make any requests for compensation and reimbursement of expenses for the initial investigation and evaluation phase under sections 330 or 331 of the Bankruptcy Code based on time recorded on an hourly basis by filing fee applications in both the TSE case and the CRS Debtors' cases for the specific time relates to each case. Any compensation and reimbursement for expenses incurred that the Court allows shall be payable as an administrative expense of the applicable estate under section 503(b) of the Bankruptcy Code from funds on hand in the applicable Debtors' estates, subject to the $750,000 cap on payment of fees.

<u>Contingency Fee Matters</u>.

28.     As claims are identified and evaluated during the course of Jenner's investigation, Jenner and the Trustee will determine whether they should be prosecuted by Jenner on a contingency fee basis. For any claims the Trustee and Jenner determine and agree should be pursued by Jenner on a contingency fee basis, the Engagement Letter provides that Jenner will be compensated on a contingency fee basis for the prosecution of those claims, whether or not litigation is commenced. Specifically, Jenner shall be entitled to the compensation based upon the aggregate recoveries from Special Litigation Matters pursued by Jenner, net of any filing fees, expert costs and other expenses related to pursuit of such claims, as follows:

| **Recoveries From Sources Other Than Lenders** | |
| --- | --- |
| First $15 million in net recoveries | 34% of the net recoveries |
| Next $85 million in net recoveries (recoveries of up to $100 million) | 20% of the net recoveries |
| Recoveries over $100 million | 10% of the net recoveries |

| **Recoveries From Lenders** | | | |
| --- | --- | --- | --- |
| | Pre-discovery | After commencement of MSJ Briefing | After trial commences |
| First $10 million in recoveries | 25% of net recoveries | 30% of net recoveries | 34% of net recoveries |
| Next $40 million in net recoveries (recoveries of up to $50 million) | 15% of net recoveries | 25% of net recoveries | |

| Next $50 million in recoveries (recoveries of up to $100 million) | 7.5% of net recoveries | 15% of net recoveries | 25% of net recoveries |
|---|---|---|---|
| Recoveries over $100 million | 5% of net recoveries | 15% of net recoveries | 20% of net recoveries |

29.    The proposed Contingency Fee was the subject of extensive arms-length negotiations between the Trustee and Jenner over the course of a number of weeks, and Jenner's initial proposed contingency fee eventually was adjusted downwards following discussions with parties-in-interest. The scope of Jenner's representation and compensation does not include any appeals.

30.    The Debtors' respective estates shall be responsible for the payment of all expert fees, maintaining and searching document databases (including all costs related thereto), and the payment of all other expenses related to prosecution of any claims, including expenses incurred by Jenner.

31.    Jenner shall file requests for compensation, in both the TSE case and the CRS Debtors' cases, with respect to Contingency Fee matters, but does not expect to be required to establish the elements set forth in section 330 of the Bankruptcy Code and the Fee Guidelines applicable to matters billed on an hourly basis. Rather, Jenner understands that the Contingency Fee is to be pre-approved under section 328(a) of the Bankruptcy Code, and that any objection to compensation may be considered solely if the terms and conditions of Jenner's retention "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and condition." 11 U.S.C. § 328(a). Jenner will keep contemporaneous records in each case

of the time expended in connection with providing such Contingency Fee services to the Trustee, but does not intend to submit those time records as part of its compensation application.

Other.

32.    No agreement or understanding exists between Jenner and any other person, other than as permitted by Section 504 of the Bankruptcy Code, to share compensation received for services rendered in connection with these cases, nor shall Jenner share or agree to share compensation received for services rendered in connection with these cases with any other person other than as permitted by Section 504 of the Bankruptcy Code.

33.    The following answer the questions in Section D.1 of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013:Section D.1 of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013:

(a) Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response:  Yes.  Jenner has agreed that it shall not be paid more than $750,000 for its work during the claim investigation and evaluation stage of the representation. Further, Jenner has agreed to a contingency fee arrangement for work done in connection with the prosecution of any claims.

14

(b) Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response:  No.

(c)  If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response:  Not applicable.  For purposes of additional disclosure, Jenner has not previously represented the Trustee in these cases, including during the twelve months preceding the Debtors' petition dates, nor has Jenner represented the Trustee in any other case during the twelve months preceding the Debtors' petition dates.  However, Jenner has represented him in his capacity as chapter 11 or 7 trustee in other cases in the past.

(d) Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response:  Yes.  The Trustee has approved Jenner's budget and staffing plan, which is reflected in the $750,000 investigation payment cap and the contingency fee arrangement for the prosecution of claims determined and agreed that they should be prosecuted by Jenner.  I believe that the investigation fee payment cap and contingency fee arrangement obviate the need for a more detailed budget that would be appropriate in other cases billed on an hourly basis.

I declare under penalty of perjury as provided in 28 U.S.C. § 1746 that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated:        January 20, 2017

/s/ Vincent E. Lazar
Vincent E. Lazar

**EXHIBIT B-1**

**ENGAGEMENT LETTER**

353 NORTH CLARK STREET CHICAGO ILLINOIS 60654-3456                    J E N N E R & B L O C K LLP

January 20, 2017                                                      Vincent E. Lazar
                                                                     Tel  312 923-2989
                                                                     Fax 312 840-7389
                                                                     vlazar@jenner.com

Mr. James Feltman, Chapter 11 Trustee
Duff & Phelps LLC
55 East 52nd St.
New York, NY 10055

Re:    *In re Corporate Resource Services, Inc. (No. 15-12329 (MG), Bankr. S.D.N.Y.)*
       *In re TS Employment, Inc. (No. 15-10243 (MG), Bankr. S.D.N.Y.)*

Dear Jim:

This engagement letter confirms your engagement of Jenner & Block LLP, an Illinois limited
liability partnership ("**Jenner & Block**") and the basis on which Jenner & Block will represent
you. We appreciate your confidence and thank you for selecting Jenner & Block as counsel.

Jenner & Block has agreed to represent James Feltman ("**you**") in your capacities as (i) chapter 11
trustee for Corporate Resource Services, Inc. and its subsidiaries ("**CRS**"), the debtors in
bankruptcy case No. 15-12329 (MG) pending in the United States Bankruptcy Court for the
Southern District of New York (the "**Bankruptcy Court**"), and (ii) chapter 11 trustee for TS
Employment, Inc. ("**TSE**" and together with CRS, the "**Debtors**"), the debtor in bankruptcy case
no. 15-10243 (MG) pending in the Bankruptcy Court, and you have agreed to seek approval of our
employment as your counsel in connection with the matters specified below.

We recognize that our employment has not been approved by the Bankruptcy Court and is subject
to final approval by the Bankruptcy Court. The effective date of our employment will be the date
on which we first performed services on your behalf.

1.    Scope of Representation. Jenner & Block will be representing you solely in your capacity
as chapter 11 trustee for the Debtors' estates and, in connection with this engagement, will not be
representing Duff & Phelps Corp., any of its parents, subsidiaries, affiliated entities, shareholders,
partners, directors, officers, agents or employees, or you in any other capacity other than your
official capacity as trustee for the Debtors. Jenner & Block will advise and represent you in
connection with, and the scope of Jenner & Block's engagement and duties to you shall relate
solely to, the investigation, evaluation and/or prosecution of claims on behalf of the Debtors'
estates against the Debtor's insiders, affiliates, lenders and/or professionals, and such additional
persons as may be identified during the course of our representation ("**the matters**"). Because the
representation is limited to a specific undertaking, Jenner & Block's acceptance of this
engagement does not involve an undertaking to represent you or your interests in any other matter

CHICAGO   LOS ANGELES   NEW YORK   WASHINGTON, DC                    WWW.JENNER.COM

Mr. James S. Feltman, Chapter 11 Trustee
January 20, 2017
Page 2

unless specifically requested by you and agreed by Jenner & Block. Also, after completion of the matters, changes may occur in pertinent laws or regulations that will have an impact upon your future rights and liabilities. Unless you engage us after completion of the matters to provide additional advice on issues arising from this matter, Jenner & Block will have no continuing obligation to advise you with respect to future legal developments.

You may limit or expand the scope of Jenner & Block's representation from time to time, subject to Bankruptcy Court approval as required, provided that Jenner & Block must agree to any expansion of scope. Except as we may otherwise agree in writing or the Bankruptcy Court orders, the terms of this engagement letter apply to all expansions in the scope of representation and to all additional engagements for you which Jenner & Block may undertake.

2.     Fees and Expenses. Except as provided for herein, our fees for this matter are based substantially upon hours charged, recorded in tenth of an hour increments, at Jenner & Block's scheduled rates which are in effect at the time the services are performed. Those scheduled rates are periodically adjusted, generally at the beginning of a calendar year. My present hourly rate is $1.025.00. Jenner & Block's present scheduled hourly rates for others range from $770.00 to $1,250.00 for partners, from $445.00 to $795.00 for associates, from $380.00 to $480.00 for staff attorneys, from $305.00 to $365.00 for paralegals and are from $205.00 to $215.00 for project assistants.

In addition to fees, our statements include out-of-pocket expenses and internal charges which Jenner & Block incurs in connection with the representation. Also, it is our standard practice to have certain charges for outside retained services (such as for expert witnesses, local counsel and consultants) invoiced directly to you. To the extent such third party charges are paid directly by Jenner & Block, they will be included on our statements.

We agree that we will conduct an initial investigation and evaluation of potential claims. Our employment for the initial investigation and evaluation shall be under section 327 of the Bankruptcy Code, and any requests for compensation and reimbursement of expenses for the investigation and evaluation shall be made under sections 330 or 331 of the Bankruptcy Code based on time recorded on an hourly basis. Any compensation and reimbursement for expenses incurred in connection with the investigation and evaluation that the Court allows shall be payable as administrative expense under section 503(b) of the Bankruptcy Code from funds on hand in the debtors' estates. However, whatever the amount of fees we incur for the investigation and evaluation, the amount sought in any fee application for such work, or the amount the court allows, the actual amount of compensation we may receive from the estates for our fees incurred related to the investigation and evaluation of potential claims shall not exceed $750,000.

It is currently contemplated, subject to the outcome of our initial investigation and evaluation, that we will pursue any claims identified during our initial investigation and evaluation on a contingency fee basis as set forth below. Upon completion of our initial investigation and

2487792.2

Mr. James S. Feltman, Chapter 11 Trustee
January 20, 2017
Page 3

evaluation, you and we agree to evaluate the claims identified during the course of the investigation, and determine whether they should be whether they should be prosecuted by us on a contingency fee basis, or whether it would be more appropriate for other counsel to prosecute certain of the claims and/or that they be prosecuted based on different basis. If you and we fail to reach agreement on a compensation arrangement for prosecution of any claims, or if the Bankruptcy Court does not approve the compensation arrangements set forth herein or agreed to hereafter, you shall not be under any obligation to continue to use our services in these matters, and we shall not be under any obligation to represent you in any litigation pursuing such claims.

In the event you and we agree that any claims should be pursued on a contingency fee basis, we will not be compensated on hourly basis with respect to the prosecution of such claims, and instead shall be entitled to the following compensation based upon the aggregate recoveries in all litigation prosecuted by us, net of any filing fees, expert costs and other expenses directly related to such litigation:

| Recoveries From Sources Other Than Lenders | |
|---|---|
| First $15 million in net recoveries | 34% of the net recoveries |
| Next $85 million in net recoveries (recoveries of up to $100 million): | 20% of the net recoveries |
| Recoveries over $100 million: | 10% of the net recoveries |

| Recoveries From Lenders | | | |
|---|---|---|---|
| | Pre-discovery | After commencement of MSJ Briefing | After trial commences |
| First $10 million in net recoveries: | 25% of net recoveries | 30% of net recoveries | 34% of net recoveries |
| Next $40 million in net recoveries (recoveries of up to $50 million): | 15% of net recoveries | 25% of net recoveries | |
| Next $50 million in net recoveries (recoveries of up to $100 million): | 7.5% of net recoveries | 15% of net recoveries | 25% of net recoveries |
| Recoveries over $100 million: | 5% of net recoveries | 15% of net recoveries | 20% of net recoveries |

Mr. James S. Feltman, Chapter 11 Trustee
January 20, 2017
Page 4

The estates shall be responsible for the payment of all expert fees, maintaining and searching document databases (including all costs related thereto), and the payment of all other expenses related to prosecution of any claims. In the event the estates fail to provide such services or pay for such expenses, we may withdraw from and terminate our representation, and seek compensation on an hourly basis for the services that had been rendered to you through the date of termination of the representation.

The scope of our representation, and the foregoing compensation, does not include any appeals. If you and we fail to reach agreement on a compensation arrangement relating to any appeals, or if the Bankruptcy Court does not approve the compensation arrangement upon which we agree, you shall not be under any obligation to continue to use our services in connection with any appeal, and we shall not be under any obligation to represent you in any appeal.

Except to the extent that we have otherwise agreed upon and the Bankruptcy Court has approved an alternative fee arrangement, the fees and other charges for these matters are not in any way contingent upon its successful completion or outcome. Unless we otherwise expressly agree in writing, any advance estimates by us of fees and expenses in connection with services to be performed, and any deposits, retainers or advances which we may require for work to continue are not a limitation nor binding commitment on our part as to the total fees and other charges for which you are responsible under the terms of this engagement

We agree that you have no personal liability for any of our fees or expenses and acknowledge that we bear all risk of allowance and availability of funds for payment of those fees and reimbursement of those expenses from the Debtors' estates. Payment of the fees and reimbursement of costs and expenses incurred in this matter will be contingent upon Bankruptcy Court approval obtained pursuant to orders approving fee applications and/or other orders of the Bankruptcy Court. Because we are representing you in your capacity as chapter 11 trustee for two estates, we will prepare separate statements for each estate and allocate the work performed and fees incurred between the estates to the extent reasonably possible.

Jenner & Block will provide you with monthly statements for any matters charges on an hourly basis, unless the amount to be billed is not significant. If you question or dispute any entry on a statement, we ask that the matter be brought to our attention promptly, so that any disputes or problems can be fairly and amicably resolved in a timely manner.

If as a result of the engagement, Jenner & Block is required to produce documents or appear as a witness in connection with any litigation, arbitration, mediation, investigation or regulatory proceeding involving you (in your capacity as chapter 11 trustee) or the Debtors, you (in your capacity as chapter 11 trustee) also agree to pay Jenner & Block from the Debtors' estates the costs and expenses (including attorney and staff time at then scheduled hourly rates) reasonably incurred by Jenner & Block in connection with such a requirement, subject to Bankruptcy Court approval as required. This provision survives the termination of Jenner & Block's representation of you.

2487792.2

Mr. James S. Feltman, Chapter 11 Trustee
January 20, 2017
Page 5

3. <u>Conflicts with Other Clients</u>.  As we have discussed, you are aware that the firm represents many other companies and individuals.  It is possible that during the time that we are representing you, some of our present or future clients will have disputes or transactions with you in your capacity as chapter 11 trustee for the Debtors' estates; with you in a different capacity; or with your employer Duff & Phelps LLC or its affiliates.  You agree that we may continue to represent or may undertake in the future to represent existing or new clients in any matter that is unrelated to our work for you as trustee for the Debtors' estates, even if such clients have interests that are directly adverse to the Debtors' estates or you in your capacity as chapter 11 trustee for the Debtors' estates.  You further acknowledge and agree that you shall not assert that any representation adverse to your employer or its affiliates, or adverse to you in a capacity other than as trustee of the Debtors' estates, constitutes a conflict of interest as a result of our representation of you in these matters.  We agree, however, that your agreement contained in the preceding sentence shall not apply in any instance where, as a result of our representation of you, we have obtained proprietary or other confidential information of a nonpublic nature that, if known to such other client, could be used in any such other matter by such client to your material disadvantage.  You further acknowledge that we cannot represent you in your capacity as chapter 11 trustee of the Debtors' estates in any matters adverse to another client of the firm unless such client has consented to the representation and waived any conflict of interest that may exist.  If such an adverse matter between you and another client of our firm arises, you will retain separate counsel to represent you with respect to the matter.

4.    <u>Termination of Representation</u>.  Either of us may terminate the engagement at any time for any reason by providing written notice, subject on the part of Jenner & Block to the requirements of applicable legal ethics rules.  Unless we agree to render additional legal services for you, Jenner & Block's representation of you and the attorney/client relationship will terminate upon delivery of such notice.

5.    <u>Document Retention</u>.  During the course of the representation, Jenner & Block shall maintain a file on your behalf.  The file may include material you have given to us in connection with the representation, as well as other material such as pleadings, transcripts, exhibits, reports, final legal and factual memorandum, investigative notes and other documents as are determined by Jenner & Block to be reasonably necessary to the representation ("**Your File**").  Your File shall be and remain your property.  Jenner & Block may also include in the file its attorney work product, mental impressions, emails and notes (collectively "**Work Product**").  Unless otherwise agreed between us, the Work Product shall be and remain the property of Jenner & Block.

At the termination of the representation and for a period of seven years thereafter, you shall have the right on request to take possession of Your File, not including the Work Product.  In such event, Jenner & Block at its expense may make and retain copies of all or portions of Your File.  If you do not request possession of Your File within such seven-year period, Jenner & Block will have no further responsibility for the retention and maintenance of Your File and may at its option dispose of all or parts of Your File without further notice to you.

2487792.2

Mr. James S. Feltman, Chapter 11 Trustee
January 20, 2017
Page 6

6.    Approval and Return of Signed Letter.  Please signify your agreement to the arrangement
for legal services described in this letter by returning to us a signed copy of the engagement letter.

We look forward to working with you.

Sincerely,

Jenner & Block LLP

By: _____
       A Partner

Accepted: _____

James S. Feltman, as chapter 11 trustee for the estates of
Corporate Resource Services, Inc. and TS Employment, Inc.

By: _____     _Subject to order of Court Approving Retention)_

Date: _____

2487792.2

**EXHIBIT B-2**
**POTENTIAL PARTIES-IN-INTEREST**

INTERNAL REVENUE SERVICE

FOCUS MANAGEMENT GROUP

CROWE HORWATH, LLP

JAMES FOLEY

WELLS FARGO

CORPORATE RESOURCE SERVICES

ROBERT CASSERA

TOM CASSERA

JOE CASSERA

YOLANDA CASSERA-TRIPPIEDI

MARIA CASSERA-URSINO

PETER URSINO

JOHN MESSINA

GINA RUSSO

ROBERT RIISK

ERNIE KOSSOFF

KOSSOFF & KOSSOFF CPA

BARRY KOSSOFF

REALIZATION SERVICES, INC.

TRI-STATE EMPLOYMENT SERVICE, INC.

TRI-TEL, INC.

TS EMPLOYMENT, INC.

BARRY KASOFF

LILLING & CO., LLP

AMERICAN CASUAL

AMERICAN HOME ASSURANCE CO.

ANDERSEN TAX, LLC

ANGELA SADANG

ARIZONA DEPT. OF ECONOMIC SECURITY

ARIZONA DEPT. OF REVENUE

AUGUST SYSTEMS, INC.

BELLSOUTH TELECOMMUNICATIONS, INC.

BLACKSTONE DISCOVERY

CENTRAL OCCUPATIONAL MEDICINE PROVIDERS

CITY OF LOS ANGELES

CITY OF PHILADELPHIA

COLORADO DEPT. OF LABOR & EMPLOYMENT

COMMONWEALTH EDISON CO.

COMMONWEALTH OF MASSACHUSETTS

CONNECTICUT DEPT. OF REVENUE

COUNTY OF ORANGE

COUNTY OF SAN BERNANDINO

DC GOVERNMENT OFFICE OF TAX AND REVENUE

DEPT.OF EMPLOYMENT AND ECONOMIC DEVELOPMENT

DEPT. OF LABOR

DEPT. OF LABOR AND INDUSTRY

DEPT. OF LABOR AND INDUSTRY-UCTS

DEPT. OF THE TREASURY

DOMAIN CHANDON, INC.

DUN & BRADSTREET

EARTHLINK

FDBA ONE COMMUNICATION

EMPLOYMENT DEVELOPMENT DEPT.

FRANCHISE TAX BOARD

FRANK VACCARO

GE CAPITAL INFORMATION TECHNOLOGY SOLUTIONS, INC.

GLORIA BLAS

GREATAMERICA FINANCIAL SERVICES CORP.

GREGORY F.X. DALY

HENRY EWEN

HUFFY CORP.

ILLINOIS BELL TELEPHONE CO.

ILLINOIS DEPT. OF EMPLOYMENT SECURITY

ILLINOIS DEPT. OF REVENUE

INDIANA DEPT. OF REVENUE

INDIANA DEPT. OF WORKFORCE DEVELOPMENT

INTEGRATED SCREENING PARTNERS

JACKSON LEWIS, P.C.

KANSAS DEPT. OF LABOR

KENTUCKY DEPT. OF REVENUE

KETTLE CUISINE, LLC

KRISTEN STEVENS

LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR

LOUISIANA DEPT. OF REVENUE

LOUISIANNA WORKFORCE COMMISSION

MADISON AVE TESTING

MAKOVSKY & COMPANY, INC.

MARIA MORENO

MARY LOU IRETON

MASSACHUSETTS DEPT. OF REVENUE

MASSACHUSETTS DEPT. OF UNEMPLOYMENT ASSISTANCE

MERRILL COMMUNICATIONS, LLC

MEYERS AND BONOMO, ESQS.

MISSISSIPPI DEPT. OF REVENUE

MISSOURI DEPT. OF REVENUE

NEBRASKA DEPT. OF REVENUE

NEW JERSEY DEPT. OF LABOR

NEW MEXICO DEPT. OF WORKFORCE SOLUTIONS

NEW YORK STATE DEPT. OF TAXATION & FINANCE

NM TAXATION & REVENUE DEPT.

NYC DEPT. OF FINANCE

NYS DEPT. OF TAX & FINANCE

OAKLEY, INC.

OHIO BUREAU OF WORKER'S COMPENSATION

OHIO DEPT OF JOB AND FAMILY SERVICES

OHIO DEPARTMENT OF TAXATION

OKLAHOMA TAX COMMISSION

OREGON DEPT. OF REVENUE

ORFUS EAST LAKE, LLC

PACIFIC BELL TELEPHONE CO.

PENNSYLVANIA DEPT. OF REVENUE

PHILADELPHIA INSURANCE CO.

PITNEY BOWES GLOBAL FINANCIAL

PITNEY BOWES GLOBAL FINANCIAL SERVICES, LLC

PITNEY BOWES, INC.

PRIMESKILL STAFFING SERVICES

RHODE ISLAND DIVISION OF TAXATION

REVENUE BUILDING

RICHARD BATTINO

RIGOBERTO HERNANDEZ

RIVERSIDE COUNTY TAX COLLECTOR

ROBERT WILLIAM REIMAN

ROSENBERG FELDMAN SMITH, LLP

SES, INC.

SHRED IT USA

SIGNARAMA OF HAUPPAUGE

SOUTHWESTERN BELL TELEPHONE CO.

SPRINT CORP.

STATE OF NEW HAMPSHIRE

STATE OF CONNECTICUT

STATE OF FLORIDA – DEPT. OF REVENUE

STATE OF IOWA

STATE OF MAINE

STATE OF MICHIGAN DEPT. OF TREASURY

STATE OF NEVADA

STATE OF NEVADA DEPT. OF TAXATION

STATE OF NEW JERSEY

STATE OF NEW MEXICO

STATE OF NEW YORK DEPT. OF LABOR

STATE OF OREGON

STATE OF UTAH

STATE OF WISCONSIN, DWD - UI

TALBOT FAMILY REALTY TRUST

TENNESSEE DEPT. OF REVENUE

TEXAS COMPTROLLE OF PUBLIC ACCOUNTS

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

TEXAS WORKFORCE COMMISSION REGULATORY

TGF MANAGEMENT GROUP HOLDCO, INC.

THE PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD

TRANSPORTATION SPECIALISTS, INC.

TS EMPLOYMENT, INC

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

U.S. SECURITIES AND EXCHANGE COMMISSION

UNIFI EQUIPMENT FINANCE, INC.

US BANK NA

US BANK EQUIPMENT FINANCE

VERIZON

VERIZON WIRELESS

VIRGINIA EMPLOYMENT COMMISSION

WASHINGTON STATE DEPT. OF LABOR & INDUSTRIES

WASHINGTON STATE DEPT. OF REVENUE

WEST VIRGINIA STATE TAX DEPT.

WESTERN MEDICAL GROUP, INC.

WISCONSIN DEPT. OF REVENUE

WM. BOLTHOUSE FARMS, INC.

YOLANDA AGUILAR

ROBERT RIISKA

JP MORGAN CHASE

CAPITAL ONE

SANTANDER BANK

SOVEREIGN BANK

BANK OF AMERICA

M&T BANK

UMB BANK

SIGNATURE BANK

BANKERS BANK

NATIONAL BANK OF ARKANSAS

ARVEST BANK

CITIBANK

COMPASS BANK

TD BANK

BRANCH BANKING & TRUST

PARKWAY BANK

BMO HARRIS BANK

OLD FLORIDA NATIONAL BANK

AMERICAN BUSINESS BANK

PNC BANK

BANK OF SACRAMENTO

WHITNEY BANK

BANK OF NEW YORK MELLON

NORTHEAST PACIFIC MERCANTILE BANK

CERTUSBANK

FIRSTAR BANK

FULTON BANK OF NEW JERSEY

AMEGY NATIONAL BANK

STERLING BANK