## SETTLEMENT AGREEMENT

This Agreement (the "**Agreement**") is entered into as of April 18, 2019, by and among (i) James S. Feltman, not individually but solely in his capacity as chapter 11 trustee (the "**Trustee**") of TS Employment, Inc. ("**TSE**"), Corporate Resource Services, Inc. ("**CRS**"), and CRS's subsidiaries Accountabilities, Inc., Corporate Resource Development Inc., Diamond Staffing Services, Inc., Insurance Overload Services, Inc., Integrated Consulting Services, Inc., The CRS Group, Inc. and TS Staffing Services, Inc. (together with CRS, the "**CRS Debtors**" and together with TSE, the "**Debtors**"), on the one hand, and (ii) Wells Fargo Bank, National Association and Wells Fargo Financial Leasing, Inc. (together, "**Wells Fargo**"), on the other hand.

### Recitals

A.  WHEREAS, on February 2, 2015 ("**TSE Petition Date**"), TS Employment, Inc. ("**TSE**"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"); and

B.  WHEREAS, on July 23, 2015 (the "**CRS Petition Date**"), the CRS Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, which case were subsequently transferred to the Bankruptcy Court; and

C.  WHEREAS, the Trustee is the duly appointed chapter 11 trustee for the Debtors; and

D.  WHEREAS, on October 2, 2017, the Trustee filed complaints (collectively the "**Complaint**") in the Bankruptcy Court seeking to recover a number of transfers made by the Debtors to Wells Fargo under various legal theories, which were assigned Adversary Nos. 17-1175 and 17-1176 (the "**Adversary Proceedings**"); and

E.  WHEREAS, the Court conducted a trial in the Adversary Proceedings on November 16, 2018 and heard closing arguments on January 23, 2019; and

F.  WHEREAS, on February 28, 2019, the Court issued a *Memorandum Opinion and Order After Trial, In re TS Employment, Inc.*, No. 15-10243 (MG), 2019 WL 994637 (Bankr. S.D.N.Y. Feb. 28, 2019) (the "**Trial Opinion**") relating to the Complaint and trial; and

G.  WHEREAS, the Parties hereto have engaged in extensive negotiations, and have concluded that the execution and performance by them of this Agreement will avoid further litigation and appeals, which would be protracted, expensive, and unpredictable, and acknowledge that they are receiving a substantial and valuable benefit if the settlement embodied herein is consummated;

NOW, THEREFORE, for good and valuable consideration, including but not limited to the releases and other consideration provided for herein, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows:

1. Recitals.

The recitals set forth above constitute an integral part of this Agreement, evidencing the intent of the Parties in executing this Agreement, and describing the circumstances surrounding its execution. Accordingly, this Agreement shall be construed in the light thereof.

2. Definitions.

In addition to the defined terms above and hereafter, the following capitalized terms used in this Agreement shall have the meanings specified below:

a. **"Claims"** means any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, duties, damages, losses, diminutions in value, obligations, judgments, decrees, matters, issues, suits and controversies of any kind or nature whatsoever, whether known or unknown, contingent or absolute, liquidated or not liquidated, accrued or unaccrued, suspected or unsuspected, disclosed or undisclosed, apparent or not apparent, foreseen or unforeseen, matured or not matured, which now exist, or heretofore or previously existed, or may hereafter exist that were raised or could have been raised in the Adversary Proceedings arising under federal, state or foreign law, common law, bankruptcy law, statute, rule or regulation, or agreement, whether individual, class, direct, derivative, representative, on behalf of others, legal, equitable, regulatory, governmental or of any other type or in any other capacity or with respect to the Account Purchase Agreements and equipment finance leases between Wells Fargo and the Debtors and related agreements.

b. **"Effective Date"** means the date on which the last condition precedent specified in paragraph 4 of this Agreement has occurred.

c. **"Final Order"** means an order that is (i) final for purposes of 28 U.S.C. § 158 or § 1291, and (ii) the time period specified in Fed. R. Bankr. P. 8002(a) for filing a notice of appeal has run and no notice of appeal has been filed, or if a notice of appeal has been filed the Final Order is no longer subject to appeal or a petition for certiorari, and no such proceedings are pending.

d. **"Parties"** means the Trustee and Wells Fargo.

e. **"Settlement"** means the settlement contemplated by this Agreement.

f. **"Settlement Order"** means an order entered by the Bankruptcy Court approving the Settlement and the Trustee's entry into this Agreement.

3. Settlement.

a. <u>Wells Fargo's Payment to Trustee</u>. No later than seven business days after the Effective Date, Wells Fargo shall pay to the Trustee, for the benefit of the Debtors' bankruptcy estates, the sum of $4,950,000 (the **"Payment"**), which shall be delivered pursuant to payment instructions provided by the Trustee.

b. <u>Court Approval</u>. Promptly following execution of this Agreement, the Trustee shall submit to the Bankruptcy Court a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of the Settlement and entry of the Settlement Order. The Trustee will use all good faith efforts to secure timely approval of the Settlement Order.

c. <u>Release of Wells Fargo Retained Cash Collateral</u>. Upon the Effective Date, the Trustee stipulates and consents to the release to Wells Fargo of the Wells Fargo Retained Cash Collateral, as defined in the *Stipulation and Order, Feltman v. Wells Fargo*, Dkt. 21 in Adv. Proc. No. 15-1391 (Bankr. S.D.N.Y. Nov. 24, 2015) (the "**Cash Collateral Stipulation**").

d. <u>Dismissal of Complaint</u>. Within three business days of the Effective Date, the Parties shall file in the Adversary Proceedings notices of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii) dismissing the Adversary Proceedings with prejudice, and shall take such other and further actions as may be reasonably necessary to cause the Adversary Proceedings to be dismissed with prejudice.

e. <u>Release of Liens and Restrictions</u>. Upon the Effective Date, all of Wells Fargo's rights to and interests in the Stipulation Reserve Account (as defined in paragraph 11 of the Cash Collateral Stipulation), and any other liens, rights, restrictions or encumbrances in favor of Wells Fargo under the Account Purchase Agreements and related documents, shall be released without the need for any action by either Party. All rights, duties and obligations of the Parties under paragraphs 5 through 9 and 14 of the Cash Collateral Stipulation shall survive the Effective Date of this Agreement and continue in full force and effect. All other obligations imposed upon the Parties by the Cash Collateral Stipulation shall terminate upon the Effective Date.

4. <u>Conditions Precedent.</u>

This Agreement shall become effective on the date the Settlement Order becomes a Final Order.

5. <u>Termination.</u>

a. Prior to the Effective Date, the Parties shall have the right to terminate this Agreement by delivery of notice of their election to do so ("**Termination Notice**") to the other Party, as follows and on the following terms:

    1) Either Party may terminate this Agreement within 30 days of the Bankruptcy Court declining to enter the Settlement Order in any material respect;

    2) In the event the Bankruptcy Court does not enter the Settlement Order within 90 days after the date of this Agreement, either Party may terminate this Agreement; and

3

3) In the event of a material breach of this Agreement, the Party negatively impacted by the breach may terminate the Agreement before the Effective Date.

b. If this Agreement is terminated pursuant to this paragraph 5, the Agreement shall be deemed to be null and void, with each party bearing its own fees and costs incurred, and the Parties shall be free to pursue all rights, remedies, defenses and claims against each other that existed as of the date hereof as if this Agreement had never been executed, delivered and entered into by the Parties.

6. Releases.

a. Release. Subject to the occurrence of the Effective Date, on behalf of the Debtors and the Debtors' estates, the Trustee hereby unconditionally, absolutely and irrevocably releases and discharges Wells Fargo and their respective subsidiaries, affiliates, predecessors, successors, assigns, loan participants, employees, officers and directors, attorneys, agents and representatives acting in such capacities, of all Claims, which the Debtors and the Debtors' estates now hold or may ever hold against Wells Fargo, it being the intention of the Trustee to reserve nothing whatsoever hereunder and to assure Wells Fargo its peace and freedom from each and every of the released claims of whatever character and description; provided, however, that nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement.

b. Wells Fargo Release. Subject to the occurrence of the Effective Date, Wells Fargo hereby unconditionally, absolutely and irrevocably releases and discharges the Debtors, the Debtors' estates and the Trustee, and with respect to the Debtors' estates and the Trustee their respective subsidiaries, affiliates, predecessors, successors, assigns, attorneys, agents and representatives acting in such capacities, of all Claims, which Wells Fargo now holds or may ever hold against the Debtors, the Debtors' estates or the Trustee, it being the intention of Wells Fargo to reserve nothing whatsoever hereunder and to assure the Debtors, the Debtors' estates and the Trustee, and each of them, their peace and freedom from each and every of the released claims of whatever character and description; provided, however, nothing in this paragraph shall be deemed or construed to be a release, waiver or discharge of the terms and conditions of this Agreement.

7. General Representations and Warranties.

a. Authority. Each of the undersigned covenants and warrants that he or she has the power and authority to execute this Agreement on behalf of the Party on whose behalf this Agreement is so executed.

b. Advice of Counsel. Each of the Parties acknowledges and warrants that it has consulted with its attorneys regarding the terms of this Agreement, and that they have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise, settlement and waiver of any and all claims as set forth herein.

c. <u>Due Diligence</u>. Each of the Parties has investigated the matters set forth in this Agreement, and all other matters pertaining to this Agreement. Each of the Parties represents and warrants that they have not relied upon any promises, agreements, representations, statements or warranties in entering into this Agreement that are not otherwise expressly provided for in this Agreement.

8. <u>No Admission of Liability.</u>

Nothing contained in this Agreement shall be deemed as an admission of any liability or lack of merit in any claim, by any party of any matter, claim, or defense previously in dispute. Each Party is aware that it may hereafter discover claims or facts in addition to or different from those it now knows or believes to be true. Nevertheless, it is the intention of the Parties to fully, finally and forever settle and resolve any and all controversies among themselves, and all claims relative thereto, that do now exist or heretofore have existed between them. In furtherance of such intention, the releases given herein shall be and remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto.

9. <u>Costs.</u>

The Parties shall bear their respective attorneys' fees and costs in connection with this Agreement and all other matters relating to or arising from the Debtors' cases.

10. <u>Successors and Assigns.</u>

This Agreement shall be binding upon, and inure to the benefit of the Parties hereto and their respective successors and assigns of the parties.

11. <u>Integration.</u>

This Agreement represents the full and complete agreement between the Parties. Any representations, warranties, promises, or conditions, whether written or oral, not specifically incorporated into this Agreement, or in any other agreements, instruments, certificates or documents delivered as required or contemplated under this Agreement, shall not be binding upon the Parties. All other discussions, negotiations, and writings have been and are merged into this Agreement.

12. <u>Writing Required.</u>

Neither this Agreement nor any term or provision hereof may be changed, waived, discharged, or terminated except by an instrument in writing duly signed by the Party against which enforcement of the change, waiver, discharge, or termination is sought.

13. <u>Governing Law and Consent to Jurisdiction.</u>

This Agreement and all other documents required or contemplated hereby shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed wholly within the State of New York but irrespective of its choice of law rules. As specific inducement for the Parties to enter into this Agreement, each of the Parties hereby consents to the jurisdiction of the Bankruptcy Court for resolution of any disputes arising under this Agreement, and waives any objection it may have to the laying of venue in any such court and any claim that such suit has been brought in an inconvenient forum.

14. <u>Notice to Parties.</u>

All notices given pursuant to this Agreement shall be delivered by hand delivery; overnight delivery by reputable overnight delivery service; or email with a copy by U.S. Mail, at the following addresses (or, if applicable, the most current address available for such Party):

If to the Trustee:

> Vincent E. Lazar
> Jenner & Block LLP
> 353 N. Clark Street
> Chicago, IL 60654
> vlazar@jenner.com

If to Wells Fargo:

> Richard Haddad
> Otterbourg P.C.
> 230 Park Avenue
> New York, NY 10169-0075
> rhaddad@otterbourg.com

15. <u>Headings.</u>

Paragraph headings contained in this Agreement are inserted for convenience of reference only, shall not be deemed to be a part of the Agreement, and shall not define or affect the meaning, construction, or scope of any of the provisions of this Agreement.

16. <u>Counterparts.</u>

This Agreement may be signed in two or more original counterparts, each of which shall for all purposes be considered an original of this Agreement. Facsimile signatures shall be treated in all manner and respects as an original signature.

IN WITNESS WHEREOF, the Parties hereby have executed and delivered this Agreement as of the day and year first above written.

_____
**James S. Feltman**, not individually but as chapter 11 trustee for the Debtors' estates


_____
**Wells Fargo Bank, N.A.**

By: _____
    ALEXANDER J. CHOBOT

Its: _SENIOR VICE PRESIDENT_


_____
**Wells Fargo Financial Leasing, Inc.**

By: _WILLIAM MAYER_

Its: _PRESIDENT_

IN WITNESS WHEREOF, the Parties hereby have executed and delivered this Agreement as of the day and year first above written.

_____, Trustee
**James S. Feltman**, not individually but as chapter 11 trustee for the Debtors' estates


_____
**Wells Fargo Bank, N.A.**


By: _____

    Its: _____


_____
**Wells Fargo Financial Leasing, Inc**.


By: _____

    Its: _____

7